Alan D. WHATLEY, et al.,
Plaintiffs-Appellants,

v.

Robert E. PHILO, et al.,
Defendants-Appellees.

No. 86–2317.

United States Court of Appeals,
Fifth Circuit.

May 18, 1987.

William W. Johnston, James E. Wren, III, Herbert S. Bristow, Waco, Tex., for plaintiffs-appellants.

Pat L. Wiseman, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Lou Bright, Asst. Atty.

* Judge Albert Tate, Jr. was a member of the panel which originally heard this appeal. Because of his death the opinion on remand is by a quorum, 28 U.S.C. § 46(d).

Gen., Austin, Tex., for defendants-appellees.

Before GEE, RUBIN, and REAVLEY, Circuit Judges.

GEE, Circuit Judge:

This § 1983 case presents the question whether the plaintiff has vitiated the defendants' qualified immunity defense. Because the plaintiff fails to allege sufficient facts to show that the defendants' conduct violated clearly established constitutional law, we affirm the district court's summary dismissal of the claim.

## Facts and Proceedings Below

Alan Whatley and Sentry Title Company, Inc. brought this § 1983 claim against Robert Philo, Ira Goodrich, and David Becker, as individuals and as officials of the Texas State Board of Insurance (Board). In 1982, the Board investigated Whatley after receiving reports that he was engaged in the unauthorized issuance of title insurance policies. Based on information provided by the defendants, the Attorney General filed in the state district court, a petition in the nature of *quo warranto* proceedings against Whatley and Sentry. Two days later, the district court imposed, *ex parte*, a temporary restraining order and temporary receivership. The court set a hearing date some two weeks hence. Whatley appeared at that hearing and agreed to a temporary injunction and continuation of the receivership. Later, although denying that he had engaged in any illegal acts, Whatley

agreed to an order that permanently enjoined him from engaging in the unlicensed practice of issuing title insurance. The district court adopted the agreed order and dismissed the case. Whatley did not appeal that decision.

Whatley then filed this claim under 42 U.S.C. § 1983 in the federal district court, contending that the defendants' conduct effected a deprivation of property without due process and constituted malicious abuse of prosecution and malicious abuse of office, all in derogation of federal constitutional guarantees. The defendants asserted their qualified immunity defense.

The district court dismissed on summary judgment,[1] on the basis that Whatley had failed to overcome the immunity defense. The court concluded that Whatley failed to show that the allegedly wrongful conduct violated clearly established constitutional rights. We agree.

## The Law

■ Public officials whose positions entail the exercise of discretion enjoy the defense of qualified immunity in § 1983 actions. *Saldana v. Garza*, 684 F.2d 1159 (5th Cir.1982), *cert. denied*, 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 813 n. 30, 102 S.Ct. 2727, 2738 n. 30, 73 L.Ed.2d 396 (1982)). Once the defendant asserts this affirmative defense the burden shifts to the plaintiff to rebut it. In *Harlow*, the Supreme Court adopted a single-pronged, objective standard[2] to test the legal validity of the defense: the plaintiff must establish that, at the time the defendant official acted, he violated clearly settled law of which a reasonable person would know. *Harlow*, 457 U.S. at 818, 102 S.Ct.

1. Whatley also sued the defendants in their official capacities and named the State Board of Insurance as a defendant. The district court dismissed these claims based on the defendants' Eleventh Amendment immunity. Whatley does not raise this issue on appeal.

2. Whatley alleges that the defendants, by initiating proceedings against him, acted "maliciously, with knowledge that they were depriving plain-

tiffs of their rights," and that therefore the defendants have abrogated their qualified immunity defense. In *Harlow*, the Supreme Court explicitly rejected the "subjective bad faith" test, holding that the plaintiff could not defeat the qualified immunity defense by "bare allegations of malice." 457 U.S. at 818–19, 102 S.Ct. at 2738–39. Whatley's argument that *Harlow* does not apply to this case is meritless.

at 2738; *Saldana,* 684 F.2d at 1164. Whatley grounds this § 1983 claim on alleged constitutional violations. Thus, on summary judgment, the threshold question of law—and the sole issue we decide—is this: Whether or not Whatley's factual allegations[3] support a conclusion that the officials' conduct violated constitutional law that was clearly established at the time of the officials' actions.

Whatley concedes that he enjoys no clearly established constitutional right to predeprivation notice and hearing in the circumstances of this case.[4] Rather, his argument rests on the premise that the notice requirements of the state statute raise the federal "constitutional minimum." Whatley focuses on the defendants' conduct of initiating the *quo warranto* proceedings against him, which resulted in the *ex parte* imposition of the temporary restraining order and receivership. He contends that state law mandates predeprivation notice and hearing.[5] He asserts that by violating the notice requirements under state law the defendants deprived him of procedural due process under the federal constitution.

We explained the "constitutional minimum" argument in *Levitt v. University of Texas at El Paso,* 759 F.2d 1224 (5th Cir.), *cert. denied sub nom. Levitt v. Monroe,* — U.S. —, 106 S.Ct. 599, 88 L.Ed.2d 578 (1985), a case involving the dismissal of a tenured professor. The *Levitt* court reiterated the rule, which was

well-established by 1982, that there is not a violation of due process every time a governmental entity violates its own rules. "Such action may constitute a ... violation of state law, but unless the conduct trespasses on federal constitutional safeguards, there is no constitutional deprivation." *Id.* at 1230 (citing *Garrett v. Mathews,* 625 F.2d 658 (5th Cir.1980); *United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979)). To sustain the position that state-mandated procedures add to the federal constitutional minimum, one must show that "the procedures promised [were] denied in such a manner that the constitutional minimum is itself denied or an independent constitutional deprivation is effected." *Id.* The *Levitt* court provided the following illustration: If a university promises two opportunities to a professor to challenge a termination decision and the professor foregoes the first opportunity, the university cannot deny the second hearing; this effects a denial of due process, even though the due process clause itself requires only one hearing. Here, Whatley was accorded a hearing two weeks after the *ex parte* imposition of the receivership. Whatley does not cite, nor do we find, authoritative law clearly establishing that, by seeking *ex parte* proceedings against him and his unlicensed title company, the defendants deprived him of the federal constitutional minimum. If the defendants violated state law, that is a matter of state law, not federal constitutional law.

---

3. Whatley did amend his complaint to comply with the heightened pleading requirements in immunity cases, as set forth in *Elliott v. Perez,* 751 F.2d 1472 (5th Cir.1985).

4. The state's *quo warranto* petition alleged that "the assets, if any, of the corporation are, and will be unavailable" to policyholders and creditors. The Supreme Court has long recognized that protecting the public interest against *economic harm* can justify the immediate seizure of property without a prior hearing. *Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947).

 Relying on *Fahey,* this Court recently upheld the constitutionality of a Louisiana statute that allowed the state without predeprivation notice and hearing to suspend agricultural warehouse

licenses temporarily. *Delahoussaye v. Seale,* 788 F.2d 1091 (5th Cir.1986). The Court further noted, "In such cases, the normal predeprivation opportunity to be heard is pretermitted if the state provides meaningful postdeprivation procedures." *Id.*

5. Whatley contends that the defendants violated the predeprivation notice and hearing requirements under the Texas Insurance Code art. 9.29 (Vernon 1981). The defendants counter that their actions were lawful under the Texas Insurance Code, the Business Corporations Act and various other statutes. We need not, and do not, reach the question whether the defendants' conduct violated state law.

**22**

*Abuse of Legal Process*

Whatley alleges that the defendants knowingly violated his due process rights by initiating "unfounded process" against him. Their actions, he contends, were not based on any sincere belief that the public needed protection, but were maliciously intended "to vex and harass" him. He contends these actions constituted malicious abuse of process and malicious abuse of office and that these allegations are sufficient to rise to the level of a cognizable constitutional tort.

 These factual allegations do not support a determination that the defendants violated any clearly established constitutional right. Even assuming that his allegations support the common law tort claim of "misuse of legal procedure," we have stated that "misuse of legal procedure, without more, does not rise to the level of a constitutional wrong remedied by § 1983." *Beker Phosphate Co. v. Muirhead,* 581 F.2d 1187, 1188 (5th Cir.1978). At most, *Beker* supports the proposition that, to be actionable under § 1983, the misuse of legal process must be "egregious." *Id.* at 1189. Whatley's bare allegations fall short and his reliance on *Jennings v. Shuman,* 567 F.2d 1213 (3rd Cir. 1977) is misplaced. The applicable law in this Circuit at the time of the alleged misconduct and later developments provide Whatley no solace. *See, e.g., White v. Thomas,* 660 F.2d 680, 683 (5th Cir.1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982) ("Section 1983 neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state."); *Brown v. Edwards,* 721 F.2d 1442, 1454 (5th Cir.1984) (distinguishing *Jennings* and explicitly rejecting the notion that abuse of process is "by definition" a denial of procedural due process).

Accordingly, we AFFIRM the district court's dismissal, under Fed.R.Civ.P. 12(b), based upon the plaintiff's failure to vitiate the defendants' qualified immunity defense.