**John DOE, Individually and on behalf of his minor two children, Plaintiffs–Appellees,**

v.

**STATE OF LOUISIANA, et al., Defendants,**

**Paula Bennett and Sheryl George, Defendants–Appellants.**

No. 92–3144.

United States Court of Appeals, Fifth Circuit.

Oct. 4, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 12, 1993.

---

Thomas E. Balhoff, Sp. Asst. Atty. Gen., Judith R. Atkinson, Mathews, Atkinson, Guglilmo, Marks & Day, Baton Rouge, LA, for defendants-appellants.

Michael M. Christovich, Kevin R. Tully, J. Roslyn Lemmon, Christovich & Kearney, New Orleans, LA, for plaintiffs-appellees.

Before KING and EMILIO M. GARZA, Circuit Judges, and HALL,[1] District Judge.

EMILIO M. GARZA, Circuit Judge:

Plaintiff John Doe, individually and on behalf of his two minor children, brought suit under 42 U.S.C. § 1983 (1988), claiming that their Fourteenth Amendment rights were violated by various state employees and entities during a child abuse investigation. The defendants filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6) on the basis of absolute and qualified immunity, which the district court granted as to all defendants, except for two. The two defendants appeal, contending that they are entitled to qualified immunity. Finding that the district court erred, we reverse.

I

The following is a summary of the facts alleged in the complaint, which for purposes of a Rule 12(b)(6) motion are taken as true. *See Jefferson v. Ysleta Indep. School Dist.,* 817 F.2d 303, 304 (5th Cir.1987). Doe and his wife (the "mother") were divorced and both were granted joint custody of their two minor children (referred to as the "daughter" and the "son"), with Doe remaining as custodial parent. The daughter and son[2] spent time with both parents. The mother took the daughter to Dr. Richard Bagnetto, a pediatrician, for a routine physical examination. Dr. Bagnetto noticed that the daughter

---

1. District Judge of the Eastern District of Texas, sitting by designation.

2. The daughter was four years of age and the son was eight years of age during the relevant period.

had a vaginal irritation, and asked the mother whether it was possible that the child had been sexually abused. The mother said that there was some possibility of sexual abuse because the daughter did not live with her all of the time. Dr. Bagnetto referred the daughter to Children's Hospital for a culdoscopic examination to determine whether the irritation was the result of sexual abuse.[3] As required by state law,[4] Dr. Bagnetto then notified the Louisiana Department of Social Services Office of Community Services ("OCS") of the suspected abuse.

Pursuant to its statutory mandate,[5] the OCS immediately began a four month investigation on August 6, 1990. Sheryl George, an OCS caseworker, and Paula Bennett, an OCS supervisor, were assigned to investigate and evaluate the charges. George insisted that Doe have no contact with his two children, and he complied. After interviewing the daughter outside of the mother's presence and having the daughter play with anatomically correct dolls, George informed the mother that the daughter had been sexually abused. The Jefferson Parish Sheriff's office then interviewed the daughter outside of the mother's presence. The interview was videotaped. Immediately after the interview the mother was informed that the videotape provided conclusive evidence of sexual abuse. Subsequently, the mother asked to view the tape, but was informed that no tape existed. When she said that she knew a tape existed, the mother was simply told that she could not see it and was ordered to say nothing about it.[6]

On the third day of the investigation, Dr. William Janzen, a psychologist who was selected by the OCS, interviewed and evaluated the daughter and the mother. He concluded that there was no evidence of sexual abuse.

George told the mother that Dr. Janzen did not make a report of his findings.

When the investigation commenced, the son was in North Carolina with his paternal grandparents. George was informed that Doe was supposed to join the son and drive him back to New Orleans. Both George and Detective John Pinero of the Jefferson Parish Sheriff's Office agreed to wait a few weeks to interview the son in New Orleans. George and Bennett secretly wrote to the 24th Judicial District Court and described the son as a victim of sexual abuse, identified the father as the alleged perpetrator, and described the son as being in urgent danger. As a result, court orders were issued and the mother went to North Carolina where, in the company of a local sheriff, she took legal custody of the son and took him back to New Orleans.

Subsequently, an informal expedited custody hearing was conducted by the 24th Judicial District Court judge who had presided over Doe's and the mother's divorce and custody proceedings. The judge determined that the OCS case file misrepresented Dr. Bagnetto's physical findings, and therefore contained at least one material factual misrepresentation. The judge placed both the daughter and son in the custody of their paternal grandparents. Thereafter, George and Detective Pinero interviewed the son, but refused to videotape the interview or allow an independent child psychologist to be present. George stated that the interview was inconclusive. George also insisted that the son undergo a proctoscopic examination, despite his parents' objections. The examination failed to produce evidence of sexual abuse. Subsequently, based on information provided by George, the District Attorney

---

**3.** Plaintiffs contend that unbeknownst to Dr. Bagnetto, the daughter had a recurring yeast infection over the past several months, which another pediatrician had diagnosed and treated. The treating pediatrician attributed the condition to the daughter's poor hygiene and obesity.

**4.** "Any mandatory reporter who has cause to believe that a child's physical or mental health or welfare is endangered as a result of abuse or neglect or sexual abuse ... shall" make a "report immediately to the local child protection unit of the Department of Health and Human

Resources and, if necessary, to a local or state law enforcement agency." La.Rev.Stat.Ann. § 14:403 Note (West Supp.1993).

**5.** *See* La.Rev.Stat.Ann. § 14:403 Note (West Supp.1993).

**6.** The plaintiffs failed in their amended complaint to identify the party or parties who gave the mother and the attorney the information about the existence of the videotape.

commenced a civil child-in-need-of-care proceeding.

Thereafter, George falsely informed the District Attorney that the grandparents would not allow the daughter to attend group counseling, in an effort to change custody from the grandparents to the mother. George then commenced an unjustified investigation of abuse of the daughter and son by the grandparents, which was abandoned when Doe's counsel intervened. In addition, OCS threatened the mother that the children would be placed in a foster home in another city if she did not give evidence that the children were sexually abused by Doe.

The hearing in the child-in-need-of-care proceeding was held about four months after the investigation had begun. The eve before the hearing, Doe's attorney requested the videotape of the daughter's interview, but was told that the tape did not exist. Under threat of court order, however, the tape was produced. The tape contained no proof that Doe sexually abused his daughter. George also produced the information contained in Dr. Janzen's report. No evidence of physical abuse was presented at the hearing; two psychologists, including Dr. Janzen, opined that no abuse had occurred. The treating physician testified that there had been no abuse. In addition, George admitted that the son had never made a statement to her to establish that either child had been sexually abused. Furthermore, although George had represented during the investigation that the culdoscopic examination of the daughter was inconclusive, the judge stated that the result of the exam was negative, and not inconclusive. The judge dismissed the charges against Doe immediately after the hearing.

Subsequently, the plaintiffs brought this action pursuant to 42 U.S.C. §§ 1983, 1988 and the Fourteenth Amendment. The plaintiffs claimed that the defendants [7] attempted to manipulate the children to give false evidence against Doe, coerced the mother, created false evidence, withheld and ignored exculpatory evidence, and made misrepresentations to the mother and two judges and the

District Attorney, and thereby interfered with the plaintiffs' right to family integrity under the Fourteenth Amendment. The plaintiffs also alleged that the defendants pursued the investigation of Doe despite the lack of evidence of sexual abuse, in violation of Doe's Fourteenth Amendment right to be free from malicious prosecution. In addition, the plaintiffs claim that the defendants violated the children's Fourteenth Amendment right to privacy by subjecting them to culdoscopic and proctoscopic examinations.

The defendants filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim or cause of action upon which relief could be granted on the ground that the defendants were entitled to absolute and/or qualified immunity. The district court granted the motion as to all defendants, except Bennett and George. The district court found that Bennett and George were not entitled to qualified immunity, because the plaintiffs' complaint alleged facts which indicated that Bennett and George violated clearly established statutory or constitutional rights of which a reasonable person would have known. In denying the motion to dismiss as to George and Bennett, the district court found that "[d]efendants' bad faith maintenance of proceedings against Doe rises to the level of a constitutional tort ... because under the facts alleged by plaintiffs, defendants violated their fundamental liberty interest in Doe's care, custody, and management of Daughter and Son, as that liberty interest is protected by the fourteenth amendment." Record on Appeal at 23. Bennett and George bring this interlocutory appeal of the order denying them qualified immunity.

## II

The plaintiffs' complaint alleged that George and Bennett (1) interfered with Doe's fundamental liberty interest in the care and custody of his children, (2) violated Doe's constitutional right to be free from malicious prosecution, and (3) violated the children's right to privacy. George and Bennett argue

---

7. Besides Bennett and George, the plaintiffs brought suit against the State of Louisiana, the Department of Social Services, the Office of

Community Services ("OCS"), Maynerva Nelson, in her capacity as Secretary, and Brenda Kelley, in her capacity as Assistant Secretary.

that the plaintiffs have failed to show the violation of clearly established constitutional rights, and therefore have not overcome their defense of qualified immunity. The complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Chrissy F. By Medley v. Mississippi Dept. of Public Welfare,* 925 F.2d 844, 846 (5th Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). The same is true when immunity is urged in a motion to dismiss. *Id.*

■ Child care workers are entitled to qualified immunity in the performance of discretionary, nonprosecutorial functions. *Stem v. Ahearn,* 908 F.2d 1, 5 (5th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991); *Hodorowski v. Ray,* 844 F.2d 1210, 1216 (5th Cir.1988); *Austin v. Borel,* 830 F.2d 1356, 1363 (5th Cir.1987). "Qualified immunity shields only that conduct not violative of clearly established rights of which a reasonable person would have known." *Austin,* 830 F.2d at 1355. The Supreme Court has stated:

> [T]he right the official is alleged to have violated must have been 'clearly established' in a ... particularized ... sense: *The contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right.* This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ...; but it is to say that in light of

preexisting law the unlawfulness must be apparent.

*Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (emphasis added); *see also Hodorowski,* 844 F.2d at 1217. *Anderson* requires that we focus on the law existing at the time of the alleged violation to determine whether or not a clearly established constitutional right was violated.[8] *Melear,* 862 F.2d at 1184 n. 8; *see also Frazier v. Bailey,* 957 F.2d 920, 929 (1st Cir.1992) (stating that "a court may not find that the right was established through the use of hindsight"); *see also Landstrom v. Ill. Dept. of Children & Family Servs.,* 892 F.2d 670, 675 (7th Cir.1990) (stating that questions of qualified immunity turn on the status of legal norms and not the sufficiency of the factual allegations).

### A

■ George and Bennett argue that a parent's substantive due process liberty interest in the right to the care and custody of his or her child was not a clearly established constitutional right at the time of the alleged violation. The plaintiffs argue to the contrary.[9] Both the plaintiffs and defendants cite to *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), *Hodorowski,* and *Frazier.*

Although we agree with the plaintiffs that those three cases recognize a constitutional right of family integrity under the Fourteenth Amendment, we disagree that those cases establish that a parent's liberty interest in family integrity is a clearly established constitutional right. While the Supreme

---

**8.** In examining preexisting law,

> [a]s a general proposition, we will not rigidly define the applicable body of law in determining whether relevant legal rules were clearly established at the time of the conduct at issue. *See Harlow v. Fitzgerald* [457 U.S. 800 at 818, n. 32] 102 S.Ct. [2727] at 2738, n. 32 [73 L.Ed.2d 396]. Relying solely on Fifth Circuit and Supreme Court cases, for example, would be excessively formalistic, but they will loom largest in our inquiries. In determining what the relevant law is, then, a court must necessarily exercise some discretion in determining the relevance of particular law under the facts and circumstances of each case, looking at such factors as the overall weight of authority,

and the status of the courts that render substantively relevant decisions, as well as the jurisdiction of the courts that render substantively relevant decisions.

*Melear v. Spears,* 862 F.2d 1177, 1184 n. 8 (5th Cir.1989).

**9.** Plaintiffs did not allege that the procedures provided under Louisiana law, concededly followed in the instant case, were constitutionally inadequate. *See* Brief for Plaintiffs at 22, 24. Instead, plaintiffs made a substantive due process argument, claiming that George and Bennett, inter alia, withheld exculpatory evidence and fabricated evidence, thereby interfering with Doe's liberty interest in the care, custody, and management of his children.

Court has recognized that parents have an abstract liberty interest in the care and management of their children, the Court has never found that interest to be absolute or unqualified. *Watterson v. Page*, 987 F.2d 1, 8 (1st Cir.1993); *Frazier*, 957 F.2d at 929–30. After reviewing relevant case law, we conclude that plaintiffs failed to show that George and Bennett violated a constitutional right that is sufficiently "particularized ... [so] that a reasonable official would understand that what he or she is doing violate[d] that right."

In *Santosky*, child care workers sought to permanently terminate the parents' custody of their children. *See id.*, 455 U.S. at 751, 753, 102 S.Ct. at 1393–95. The Supreme Court held that a state cannot permanently sever the parent-child relationship without providing parents with "fundamentally fair procedures." *Id.*, 455 U.S. at 754, 102 S.Ct. at 1395.

In *Hodorowski*, the plaintiffs argued that child protective service workers were not entitled to qualified immunity, because the workers interfered with their right to family integrity under the Fourteenth Amendment by removing the children from their parents' home without a prior court order. *Id.*, 844 F.2d at 1212. We rejected the plaintiffs' procedural due process argument, concluding that *Santosky* was distinguishable due to the state's attempt in that case to permanently deprive parents of custody while the instant case involved a temporary deprivation. *See Hodorowski*, 844 F.2d at 1217. In doing so, we stated that "it would be a mistake to conclude that, from *Santosky* ... alone, the appellants should have known that taking the Hodorowski children into temporary custody violated a constitutional right." *Id.* at 1217. In reaching that conclusion, we noted the nebulous nature of the right to family integrity, and held that that right was not sufficiently particularized that a reasonable officer would understand that his or her conduct violated that right. We further stated:

> An important consideration in deciding whether an official violated clearly estab-

lished law is the generality of the relevant rule. ... [M]any general constitutional rights, such as the right to due process of law, are clearly established and yet so general that it often will be unclear whether particular conduct violates the right. ...

The district court held that appellants were not protected by qualified immunity because they violated the clearly established right of 'family integrity.' We think the district court's formulation of the right was too general. It is beyond dispute that many aspects of family integrity possess constitutional stature. But reasonable government officials, knowing only that they must not infringe on family integrity, would not necessarily know just what conduct was prohibited. In particular, in the absence of more fact-specific authority, we do not think that appellants in this case should have known that their conduct in removing the Hodorowski children from the home violated the nebulous right of family integrity.

*Id.* (citation omitted) (footnote omitted). In conclusion, we held that the child care workers violated no clearly established constitutional right. *See id.* at 1217.

In *Frazier*, a case involving facts and allegations similar to those in this case, the First Circuit also emphasized that the contours of the right to family integrity are not well-defined.[10] There the plaintiff alleged that a child care social worker interfered with his constitutional liberty interest in the care, custody, and management of his children by ignoring exculpatory evidence and by programming his children to falsely accuse him of sexual abuse during the course of an investigation of the plaintiff for the alleged sexual abuse of his two children. *See Frazier*, 957 F.2d at 925, 929. The First Circuit discussed in length whether the child care worker had violated a clearly established right of family integrity. In doing so, the First Circuit noted that courts have experienced difficulty in finding a clearly established constitutional right in the context of family relationships. *See id.* at 930 (citing *Hodorowski* ). The

---

**10.** Although *Frazier* was decided two years after the alleged violation, the state of the law in 1992 as explained by the First Circuit did not differ from the state of the law at the time of the alleged unconstitutional conduct.

First Circuit explained that this was due to "(1) the difficulty of alleging a right with sufficient particularity, and (2) the qualified nature of the rights in this area." *Id.* The First Circuit then stated that is not enough for a plaintiff to "allege an abstract due process liberty interest in family relationships." *Id.* Pointing out that courts have emphasized the nebulous nature of a liberty interest in familial relationships, the First Circuit stated that because an interest in family integrity "must always be balanced against the governmental interest [in the health, education, and welfare of children as future citizens], it is difficult, if not impossible, for officials to know when they have violated 'clearly established' law." *Id.* at 930–31. The First Circuit concluded that "the dimensions of [the] right [to family integrity] have yet to be clearly established." *Id.* at 931. Thus, the First Circuit held that the plaintiff failed to show that the child care worker's conduct violated the amorphous right of family integrity, and that therefore the child care worker was entitled to qualified immunity as a matter of law. *See id.*

Given the absence of more fact-specific law,[11] and in light of *Hodorowski, Santosky*—both procedural due process cases— and *Frazier*, we cannot conclude that the preexisting law establishes that George and Bennett should have known that their conduct violated the nebulous right of family integrity.[12] Therefore, as a matter of law, George and Bennett did not violate a constitutional right that was clearly established at the time of the alleged conduct.[13]

## B

■ George and Bennett next allege that they did not violate a clearly established Fourteenth Amendment right to be free from malicious prosecution. The plaintiffs claimed that George and Bennett continued the investigation and child-in-need-of-care proceeding initiated by the District Attorney after it was clear that there was no evidence to support the allegation that Doe sexually abused his children. The plaintiffs' contention essentially asserts the common law tort of malicious prosecution. The issue confronting us is whether, and under what circumstances, malicious prosecution might rise to the level of a constitutional violation for which § 1983 provides a remedy.

Although the alleged malicious prosecution occurred in a civil custody proceeding and a civil child-in-need-of-care proceeding, the plaintiffs argue that the underlying proceedings should be considered quasi-criminal because Doe could have been criminally prosecuted and was advised of his Fifth Amendment rights at the child-in-need-of care adjudication. The circuits are divided on whether malicious prosecution alone constitutes a constitutional violation where the underlying proceeding was criminal. In *Wheeler v. Cosden Oil & Chemical Co.*, 734 F.2d 254 (5th Cir.), *modified on reh'g on other grounds*, 744 F.2d 1131, 1133 (5th Cir.1984), we concluded that the Fourteenth Amendment requires States to make a determination of probable cause before prosecuting, and therefore held that an allegation of malicious prosecution alone is actionable under § 1983. *See id.* at 260, *see also Sanders v. English*, 950 F.2d 1152, 1163 (5th Cir.1992); *Hand v. Gary*, 838 F.2d 1420, 1424–26 (5th Cir.1988). However, most courts have held that the tort of malicious prosecution alone does not implicate constitutionally protected rights, and therefore is not actionable under § 1983 where the underlying proceeding was crimi-

---

**11.** We recognize, however, that "[i]t is not necessary to point to a precedent which is factually on all-fours with the case at bar. It suffices that the [defendant] be aware of general, well-developed legal principles." *Jefferson*, 817 F.2d at 305 (footnote omitted). In this case, however, we cannot discern any well-developed legal principles of which George and Bennett should have been aware.

**12.** Although there may have been some wrongdoing, "immunity that applies only when the defendant did no wrong is no immunity at all." *Mills-*

*paugh v. County Dept. of Public Welfare of Wabash County*, 937 F.2d 1172, 1175 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 638, 116 L.Ed.2d 656 (1991).

**13.** Although plaintiffs allege malice and wrongdoing, that allegation fails to transform the liberty interest in family integrity into a clearly established constitutional right. *See Siegert v. Gilley*, —— U.S. ——, —————, 111 S.Ct. 1789, 1793– 94, 114 L.Ed.2d 277 (1991).

nal. *See, e.g., Albright v. Oliver,* 975 F.2d 343, 345–46 (6th Cir.1992), cert. granted, —— U.S. ——, 113 S.Ct. 1382, 122 L.Ed.2d 757 (1993) (stating that a claim of malicious prosecution alone, whether civil or criminal, does not constitute a deprivation of liberty or property within the meaning of the due process clause and is therefore not actionable under § 1983); *Smith v. Mass. Dept. of Corrections,* 936 F.2d 1390, 1402 (1st Cir.1991) (stating that a claim of malicious prosecution alone does not state an actionable claim under § 1983); *Gunderson v. Schlueter,* 904 F.2d 407, 409 (8th Cir.1990) ("[M]alicious prosecution can form the basis for a section 1983 action only if the defendants' conduct ... infringes some provision of the Constitution or federal law."); *Coogan v. City of Wixom,* 820 F.2d 170, 175 (6th Cir.1987) (stating that only when malicious prosecution is so egregious as to constitute a deprivation of constitutional dimension does § 1983 provide a remedy).

Plaintiffs argue that because the underlying proceedings were quasi-criminal we should find that their allegation of malicious prosecution alone sufficiently states a constitutional violation that is actionable under § 1983. We reject the plaintiff's argument. It is entirely speculative whether Doe would have been criminally prosecuted for child abuse. We find no authority for and decline to hold that the mere possibility of criminal prosecution converts an otherwise civil proceeding into the equivalent of a criminal proceeding for purposes of determining whether a constitutional right was violated.[14] Therefore, we refuse to apply *Wheeler* and its progeny to this case. Thus we must now determine whether and when a claim of mali-

cious prosecution is actionable under § 1983 where the underlying proceeding was civil.

It is unclear when the tort of malicious prosecution states a claim for denial of civil rights under § 1983 where the malicious prosecution occurred in a civil proceeding. Even assuming that the plaintiffs' allegations support the common law tort of malicious prosecution, we stated in *Beker Phospate Corp. v. Muirhead,* 581 F.2d 1187 (5th Cir. 1978), that "[t]he common law tort of misuse of legal procedure, without more, does not give rise to the level of constitutional wrong remedied by Section 1983."[15] *Id.,* 581 F.2d at 1189; *Cloutier v. Town of Epping,* 714 F.2d 1184, 1190 (1st Cir.1983). However, we concluded that a claim of malicious prosecution may state a constitutional violation in some instances: "litigiousness which gives rise to a common law tort action for misuse of legal procedure may be so egregious as to constitute a violation of § 1983 as well, if the tort-feasor, under color of state law, subjects the tort-victim to a deprivation of constitutional dimension." *Beker,* 581 F.2d at 1189; *see also Sisk,* 868 F.2d at 162 (holding that defendants' initiation of civil proceedings was not "egregious" misuse of legal process and that therefore defendants were entitled to qualified immunity); *Whatley v. Philo,* 817 F.2d 19, 22 (5th Cir.1987) (holding that plaintiff failed to show that defendants' alleged abuse of legal process violated a clearly established constitutional right, because "[a]t most, *Beker* supports the proposition that, to be actionable under § 1983, the misuse of legal process must be 'egregious'"); *Easton v. Sundram,* 947 F.2d 1011, 1017 (2d Cir. 1991) (holding that "[t]he misuse of the legal process must be so egregious as to work a deprivation of a constitutional dimension"),

---

**14.** The plaintiffs' argument that this case involved quasi-criminal proceedings because Doe was informed of his Fifth Amendment rights is to no avail, for a witness may properly invoke the Fifth Amendment "privilege against compulsory self-incrimination ... 'in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory' when he [or she] 'reasonably apprehends a risk of self-incrimination, ... though no criminal charges are pending against him [or her], ... and even if the risk of prosecution is remote.'" *In Re Corrugated Container Anti–Trust Litigation,* 620 F.2d 1086, 1091 (5th Cir.1980) (quoting *Wehling v. Columbia Broad-*

*casting System,* 608 F.2d 1084, 1087 n. 5 (5th Cir.1979) and *Kastigar v. United States,* 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972)), *cert. denied,* 449 U.S. 1102, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981).

**15.** We have described "misuse of legal procedure" as "encompassing three separate but related common law torts which protect the interest in freedom from unjustified litigation: (1) malicious prosecution; (2) wrongful civil proceedings; and (3) abuse of process." *Sisk v. Levings,* 868 F.2d 159, 161 (5th Cir.1989).

cert. denied, —— U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992); *McMaster v. Cabinet for Human Resources,* 824 F.2d 518 (6th Cir.1987) (holding that the defendants' alleged malicious prosecution did not violate a constitutional right because it did not "shock the conscience").

Although the above-cited cases indicate that a civil malicious prosecution claim may give rise to a constitutional claim where egregious conduct is present, none of those cases even hint as to what constitutes such egregious conduct. We have found only two cases where the court found that the plaintiffs' claim of misuse of legal procedure in a civil proceeding stated a constitutional violation because the defendants' conduct was so egregious. In *Vinson v. Campbell County Fiscal Court,* 820 F.2d 194 (6th Cir.1987), a mother's children had been removed from her custody in Ohio by a Kentucky juvenile services probation officer after it was determined that the mother's children were truant from their schools in Kentucky. *Id.* at 196–97. The mother brought a civil rights actions against the probation officer, alleging abuse of process. *See id.* at 200. The court found an egregious abuse of governmental power sufficient to state a claim under § 1983. *See id.* at 201. In *Cale v. Johnson,* 861 F.2d 943 (6th Cir.1988), the defendant, a prison official, planted drugs on the plaintiff, a prison inmate, for retaliatory purposes. Because the plaintiff was subject to the possibility of disciplinary actions and a resulting loss of liberty, the Sixth Circuit held that the defendant's alleged conduct constituted an egregious abuse of governmental power, and that therefore the plaintiff's abuse of power claim adequately stated a constitutional claim that was actionable under § 1983. Despite the holdings of those two cases, it can hardly be said that in light of the law in 1990 that the unlawfulness of George's and Bennett's conduct was apparent. Consequently, "there was no clearly established constitutional counterpart to an action for malicious prosecution." *Santiago v. Fenton,* 891 F.2d 373, 388 (1st Cir.1989).

Nonetheless, the district court found that George and Bennett's "bad faith maintenance of proceedings against Doe rises to the level of a constitutional tort ... because ... defendants violated [the plaintiffs'] fundamental liberty interest in Doe's care, custody, and management of Daughter and Son." Record on Appeal at 23. We, however, refuse to take a synergistic approach, and thus decline to find that the plaintiffs' claims of malicious prosecution and interference of family integrity, both of which were not clearly established constitutional rights at the time of the alleged unlawful conduct, taken together state a violation of a clearly established constitutional right.

### C

■ Lastly, George and Bennett contend that they violated no clearly established constitutional right by having the son and daughter physically examined for signs of sexual abuse. The plaintiffs claimed that the son and daughter were subjected to proctoscopic and culdoscopic examinations in violation of their right to privacy under the Fourteenth Amendment. Under Louisiana law, child care workers who have reason to believe that a child has been sexually abused may obtain a court order for a physical examination of the child. *See* La.Rev.Stat.Ann. § 14:403 Note (West Supp.1993). We conclude that in light of preexisting law, George and Bennett would not have known that their efforts to fulfill their public responsibility in determining whether sexual abuse occurred violated a constitutional right. *See Darryl H. v. Coler,* 801 F.2d 893, 908 (7th Cir.1986) (state social workers entitled to qualified immunity in action by parents alleging unconstitutionality of visual inspection of unclothed children conducted by social workers in investigating child abuse claim); *see also Landstrom,* 892 F.2d at 676–77 (holding that defendants entitled to qualified immunity because no clearly established constitutional violation where defendants physically examined unclothed child, court found absence of case law establishing a relevant clearly established legal norm against which defendants could have evaluated their own proposed course of conduct.) We find no violation of a clearly established constitutional right.

### III

For the foregoing reasons, we hold that George and Bennett are entitled to qualified immunity from liability in this case. The district court's judgment is REVERSED.

KING, Circuit Judge, concurring in the judgment:

I agree with the majority's holding that the caseworkers, Bennett and George, are entitled to qualified immunity as a matter of law. Unlike the majority, however, I do not reach the question whether Doe has alleged the violation of a "clearly established" constitutional right, as required by *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This is because, in my view, Doe's allegations fail "at an analytically earlier stage of the inquiry into qualified immunity." *Siegert v. Gilley*, ⎯ U.S. ⎯, ⎯, 111 S.Ct. 1789, 1791, 114 L.Ed.2d 277 (1991). Specifically, I would hold that Bennett and George are entitled to qualified immunity because Doe has not asserted the violation of a constitutional right at all. *See id.* at ⎯, 111 S.Ct. at 1793.

### I.

Initially, I note that the allegations in Doe's amended complaint, if true, are "nightmarish." Two child protective services workers, in a rush to prove that Doe sexually abused his young children, launched a four-month investigation which may best be described as a "witch hunt." Among other things, the two workers: suppressed the results of reports indicating that no sexual abuse had occurred; misrepresented to authorities the nature of the findings in those reports; obtained, in secret and through deception, a court order awarding custody of Doe's son to his mother; and gave false information to the District Attorney's office in an effort to have the children removed from the temporary custody of their paternal grandparents. As a result of the deception practiced by these two workers, Doe was effectively denied all contact with his children for some four months, when he was ultimately exonerated.

That the actions of which Doe complains are egregious, however, does not mean that he has asserted the violation of a federally protected right, as required by 42 U.S.C. § 1983. After all, the gravamen of his complaint is malicious prosecution, a state law tort claim. Thus, as the majority recognizes, "[t]he issue confronting us is whether, and under what circumstances, malicious prosecution might rise to the level of a constitutional violation for which § 1983 provides a remedy." Majority Opinion at 1418.

### II.

The majority suggests that civil malicious prosecution, such as that alleged in this case, may give rise to a constitutional claim where egregious conduct is present. However, it never actually decides the question. Rather, the majority assumes that an "egregious" civil malicious prosecution could violate the constitution, only to then hold that the right at issue was not clearly established in 1990, when George and Bennett allegedly conducted their bad faith investigation.

I would approach all malicious prosecution claims under § 1983 in a different way. The Fifth Circuit has, admittedly, flip-flopped on the question of whether malicious prosecution is independently cognizable under § 1983. *See Brummett v. Camble*, 946 F.2d 1178, 1180 n. 2 (5th Cir.1991), *cert. denied*, ⎯ U.S. ⎯, 112 S.Ct. 2323, 119 L.Ed.2d 241 (1992). In my view, the better answer is that such a claim is not in and of itself cognizable under § 1983. As Judge Posner explained in *Mahoney v. Kesery*, 976 F.2d 1054, 1060 (7th Cir.1992), "[i]f defamation is not actionable [as a constitutional tort, *see Paul v. Davis*, 424 U.S. 693 [96 S.Ct. 1155, 47 L.Ed.2d 405] (1976) ], it is difficult to believe that malicious prosecution is." *See also Albright v. Oliver*, 975 F.2d 343, 345–346 (7th Cir.1992), *cert. granted*, ⎯ U.S. ⎯, 113 S.Ct. 1382, 122 L.Ed.2d 757 (1993). This does not mean, however, that actions amounting to defamation or malicious prosecution can never form the basis for a § 1983 claim. For example, "either tort can be a link in a chain showing a deprivation of liberty or property without due process of law." *Mahoney*, 976 F.2d at 1060 (citing *Raysor v.*

*Port Authority,* 768 F.2d 34, 39–40 (2d Cir. 1985), *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986)).[1]

Thus, to the extent that Doe has sought relief solely on the basis of a malicious prosecution, I would hold that the allegations do not, in the words of *Siegert,* assert the violation of a constitutional right at all. To the extent he is asserting a deprivation of liberty or property without due process of law, however, his allegations must be scrutinized more closely.

### III.

As I read Doe's amended complaint, he has clearly sought to link George and Bennett's malicious prosecution to a chain showing the deprivation of a liberty interest without due process of law. Doe specifically asserts that the defendants violated his

> fundamental liberty interest in the care, custody, and management of the minor children which is a protected Fourteenth Amendment right pursuant to *Santosky v. Kramer,* [455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)], because the action of the defendants, as outlined below, sought to destroy the familial bonds *without a fundamentally fair procedure and without sufficient basis in fact.*

(emphasis added). The case on which Doe relies—namely, *Santosky v. Kramer*—is a procedural due process case. There, the Court held that when a state moves to de-stroy family bonds (i.e., by terminating the parent-child relationship), it must provide the parents with fundamentally fair procedures. Because of Doe's reliance on *Santosky* (and his allegations that he was denied a "fundamentally fair procedure"), I would construe his complaint as attempting to assert a procedural due process claim.[2]

Doe's allegations, if true, clearly satisfy the first two elements of a procedural due process claim. That is, he has sufficiently alleged that he was *deprived* of a *liberty interest.* His amended complaint recounts that, during the four-month investigation, he basically lost custody of his children.[3] And, in *Santosky* the Court made clear that natural parents have a "fundamental liberty interest . . . in the care, custody, and management of their child"—an interest that may be destroyed only with "fundamentally fair procedures." *See* 455 U.S. at 753–54, 102 S.Ct. at 1394–95. Even though Doe was only temporarily deprived of this liberty interest, it seems entirely consistent with *Santosky* to require that this deprivation occur in the context of fundamentally fair procedures. *See Hooks v. Hooks,* 771 F.2d 935, 941 (6th Cir.1985) (reading *Santosky* to require that any deprivation of a parent's liberty interest in the custody of his or her children be "accomplished by procedures meeting the requirements of due process").

The problem with Doe's procedural due process claim ultimately lies with his ability

---

**1.** Fourth Amendment protections may also be implicated in cases involving malicious prosecution. *See, e.g., Sanders v. English,* 950 F.2d 1152, 1159 (5th Cir.1992).

**2.** The majority construes Doe's complaint to raise only a substantive due process claim; yet it relies primarily on *procedural* due process cases in determining that George and Bennett are entitled to qualified immunity. Doe has, admittedly, been less than clear on the question of whether he is asserting a procedural due process claim, a substantive due process claim, or both. My review of his amended complaint, however, convinces me that he has sought to raise a procedural due process claim. Moreover, because I do not think that there is an independent federal claim for "malicious prosecution," I would necessarily reject any attempt to phrase such a claim as a substantive due process violation. After all, the essence of a malicious prosecution claim is an egregious abuse of the legal process; if such allegations were sufficient to raise a substantive due process claim, then every claim of malicious prosecution would be converted, ipso facto, into a federal claim.

**3.** According to his complaint, he initially complied with one of the caseworkers' request that he have no contact with his children. There is some question as to whether this action would constitute a "deprivation" for purposes of due process analysis. *See Weller v. Department of Social Servs. for Baltimore,* 901 F.2d 387, 393 (4th Cir.1990) ("If one voluntarily surrenders a liberty interest to the State, there has been no 'deprivation' of that interest by the State, and no due process violation.") However, there can be no question that when the state district judge placed Doe's children in the temporary custody of their paternal grandparents, he was "deprived" of a liberty interest within the meaning of the Fourteenth Amendment.

to demonstrate—on the facts as alleged—that he was deprived of custody of his children *without due process of law.* Several courts have held that due process does not mandate a *prior hearing* in cases where emergency action may be needed to protect a child. *See, e.g., Weller v. Department of Social Servs. for Baltimore,* 901 F.2d 387, 393 (4th Cir.1990). Of course, when the state temporarily deprives a parent of custody of a child, it must provide a prompt post-deprivation hearing to ratify the emergency action. *See id.* at 396. This is basically what occurred in Doe's case—at least if we accept his allegations as true. Although he temporarily lost custody of his children, the state court procedures ultimately exonerated him and, as a result, his liberty interest was restored.

To the extent that Doe is seeking compensation from George and Bennett for their malicious actions in bringing about this temporary deprivation, I would hold that Louisiana's post-deprivation procedures provide Doe with all the process he is due.[4] *See Mahoney,* 976 F.2d at 1061 (noting possibility that Supreme Court's decision in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), has "wiped out" all due process/malicious prosecution claims). Louisiana clearly recognizes an action for civil malicious prosecution. *See Jones v. Soileau,* 448 So.2d 1268, 1271 (La.1984) (the first element of a malicious prosecution claim is "the commencement or continuance of an original criminal *or civil* judicial proceeding") (emphasis added). Moreover, Louisiana law gives caseworkers like George and Bennett only good faith immunity in carrying out their investigative responsibilities.[5] Given that Louisiana's procedures allow tort recovery for the sort of bad faith child abuse investigations at issue here, Doe simply cannot demonstrate that he was deprived of his

liberty interest in the custody of his children without fundamentally fair procedures. *Cf. Vinson v. Campbell County Fiscal Court,* 820 F.2d 194, 199 (6th Cir.1987) (concluding that summary judgment on procedural due process/false imprisonment claim was proper when plaintiff alleged "only that she was deprived of a liberty interest because established state procedures were not followed, [and] not that the established state procedure effected a deprivation"); *Fitzgerald v. Williamson,* 787 F.2d 403, 408 (8th Cir.1986) (holding that state law procedures concerning parents' custodial rights were adequate for due process purposes).

Thus, I would hold that, under *Siegert,* Doe has not asserted a violation of his right to due process of law. George and Bennett are, consequently, entitled to qualified immunity on Doe's procedural due process claim, but only because state procedures provide him with an adequate post-deprivation remedy. This case might be different if Louisiana gave its child protective workers absolute immunity or if, after pursuing his state court remedy, Doe had alleged that the procedures employed by the state were in some way constitutionally defective. But he has not made such allegations. Accordingly, I must conclude that he has not asserted the violation of any federally protected right.

---

4. Indeed, it is difficult to see how the state could have intervened to prevent the kind of abuse about which Doe complains.

5. Specifically, at the time of the events in this case, a caseworker could be held civilly or criminally liable if (1) *in bad faith* she "conduct[ed] an

investigation, ma[de] an investigative judgment or disposition, or release[d] or use[d] information contained in the central registry," or (2) she "ma[de] a report known to be false or with reckless disregard for the truth of the report." *See* LA.REV STAT.ANN. § 14:403 (West Supp.1993) (historical notes).