**Robert DEFORE and Gaylene Defore, Plaintiffs,**

**v.**

**Carol PREMORE, Individually and as a Child Protective Services Caseworker of the Clinton County Department of Social Services; Rose M. Pandozy, as Commissioner of the Clinton County Department of Social Services; Katherine Tallon, Individually and as a Child Protective Services Unit Supervisor of the Clinton County Department of Social Services; Servants and/or Employees of the Clinton County Department of Social Services whose Names are Presently Unknown, Individually and in their Official Capacity as Agents, Servants and/or Employees of Clinton County Department of Social Services, Defendants.**

**No. 88–CV–241.**

United States District Court, N.D. New York.

Oct. 6, 1994.

Asadourian & Johnston (Stephen Johnston, of counsel), Plattsburgh, NY, for plaintiffs.

Brooks & Meyer (James Brooks, of counsel), Lake Placid, NY, for defendants.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

Before the court is defendants' motion pursuant to Fed.R.Civ.P. 50 for judgment as a matter of law, claiming that defendants are entitled to qualified immunity from suit under Federal and New York State law. On September 23, 1994, the court granted a directed verdict for defendants in a decision from the bench. This Memorandum–Decision and Order fully sets forth the court's rationale for its ruling, based on the evidence presented during the trial.

## I. BACKGROUND

On March 8, 1985, Erika Defore informed her high school nurse and psychologist that she had been neglected and physically abused by her parents, plaintiffs Robert and Gaylene Defore. School officials filed a report with the New York State Central Register for Child Abuse, which was referred to the Clinton County Department of Social Services ("DSS"), Child Protective Services Unit. Defendant Carol Premore, a child protective services caseworker, was assigned to investigate the complaint.

On March 11, 1985, Erika ran away from home and stayed the night at a friend's house. The following day, a clinical psychologist at the Clinton County Mental Health Clinic ("CCMHC") interviewed Erika and concluded that Erika was in an "acute crisis situation". While returning Erika to a friend's house from CCMHC, Ms. Premore asked Erika "numerous times" whether she had been sexually abused, to which Erika

replied "no". Eventually, Erika relented her position and charged that her father had sexually abused her and that Ms. Defore was aware of the abuse.

On March 13, 1985, Erika's mother signed a Voluntary Placement Agreement ("VPA") which temporarily placed Erika in the care and custody of DSS. Ms. Defore vehemently asserts that she only signed the agreement because Ms. Premore assured her that the VPA would be non-binding absent her husband's signature and that it was the only means to provide Erika with a place to stay at night. Ms. Premore did not inform Ms. Defore of Erika's allegations of sexual abuse prior to her signing the VPA. That same day, Ms. Premore met with Mr. Defore, who refused to sign the VPA because he did not believe that it was in Erika's best interests.

Later on March 13, 1985, defendants placed Erika in foster care. On April 2, 1985, Erika was hospitalized after taking an overdose of Tylenol. Ms. Premore called Ms. Defore to obtain her consent to Erika's treatment. Ms. Defore visited the hospital and provided consent for the treatment, but was not allowed by the hospital staff to see her daughter. On May 1, 1985, the day she was scheduled to leave the hospital, Erika made another suicide attempt. Without advising the Defores of the second suicide attempt, DSS transferred Erika to the St. Lawrence Psychiatric Center.

On May 3, 1985, DSS obtained an *ex parte* order for temporary custody of Erika from the Clinton County Family Court, based in part on the VPA signed by Ms. Defore. On May 8, 1985, defendants filed a petition with the Family Court charging plaintiffs with sexual abuse. At the conclusion of hearings, the court dismissed the petition and advised plaintiffs that they had a right to bring a proceeding in Family Court to reclaim legal custody of Erika.

On August 21, 1985, plaintiffs filed a petition seeking to terminate the May 3, 1985 temporary order granting custody of Erika to DSS. On October 17, 1985, a Family Court judge determined after a hearing that DSS should retain custody of Erika. That conclusion was based in part on a finding that Ms. Defore knowingly and voluntarily executed the VPA.

Between 1986 and 1988, Erika remained under the jurisdiction and supervision of the Family Court. She resided at foster home facilities and periodic judicial hearings were held pertaining to her continued custody by DSS.

In late 1987, plaintiffs brought an administrative hearing to expunge the records of the New York State Central Register of Child Abuse. At the hearing's conclusion, the Administrative Law Judge ordered the records expunged. During Erika's testimony in the case at bar, she testified that there was no truth to the allegations that Mr. Defore sexually abused her.

## II. *DISCUSSION*

Defendants bring this motion pursuant to Fed.R.Civ.P. 50 for judgment as a matter of law. In ruling on a motion for judgment as a matter of law, a court must "view the evidence in the light most favorable to the party against whom the motion was made." *Metromedia Co. v. Fugazy,* 983 F.2d 350, 361 (2d Cir.1992). The court may grant the motion only if, after drawing all inferences and credibility assessments against the moving party, the court determines that a reasonable juror would be compelled to accept the view of the moving party. *Piesco v. Koch,* 12 F.3d 332, 343 (2d Cir.1993).

 In support of its motion for judgment as a matter of law, defendants claim that they are entitled to qualified immunity from suit under both Federal and New York state law. Qualified immunity is a question of law for the court to decide, not a question of fact for the jury. *Hunter v. Bryant,* 502 U.S. 224, ——, 112 S.Ct. 534, 536–37, 116 L.Ed.2d 589 (1991). Government officials performing discretionary functions are entitled to qualified immunity provided their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[1]

1. The Second Circuit has held that child protective services caseworkers are government officials entitled to qualified immunity for their actions in removing a child from the parents' custo-

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Thus, defendants are entitled to judgment as a matter of law if the right claimed by plaintiff was not clearly established at the time of the events in issue, or it was objectively reasonable for defendants to believe that their acts "did not violate such rights as they were then clearly established." *van Emrik v. Chemung County Dep't of Social Serv.,* 911 F.2d 863, 865–66 (2d Cir.1990). As to the first prong of the analysis, the Defores bear the burden of showing that a constitutional right was clearly established at the time of its violation by government officials.[2] *Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 3020–21, 82 L.Ed.2d 139 (1983). However, as to the second prong of the analysis, defendants bear the burden of showing that the disputed acts were objectively reasonable. *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2736–37. With these principles in mind, the court turns to an analysis of defendants' qualified immunity argument.

■ Defendants contend that at the time of the acts in issue, it was not clearly established that plaintiffs had a constitutional liberty interest in the right to the care and custody of their children. Accordingly, defendants argue that they did not violate plaintiffs' "clearly established" rights and thus are entitled to qualified immunity.

In determining whether plaintiffs had a clearly established liberty interest at stake, the court begins its analysis by noting that it is well established in the Second Circuit that the United States Constitution offers some protection against state action interfering with parental custody. *van Emrik,* 911 F.2d at 865. At least as far back as 1977, the Second Circuit has recognized that remaining together as a family is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *Duchesne v. Sugarman,* 566 F.2d 817, 824–25 (2d Cir.1977). In particular, this right encompasses both a parental interest in the companionship, custody, and care of the children and those "of the children in not being dislocated from the emotional attachments that derive from the intimacy of daily association with the parent." *Duchesne,* 566 F.2d at 825. In light of *Duchesne,* since the conduct at issue in this case did not begin to occur until about March 1985, the court concludes that plaintiffs had a constitutionally protected liberty interest in the care and custody of their daughter, Erika Defore.

This, however, does not conclude the court's analysis. Plaintiffs must show that this liberty interest was defined with reasonable specificity. In this regard, the court is constrained by a dearth of case law establishing as unconstitutional defendants' interference with plaintiffs care and custody of their child. Plaintiffs have attempted to show that defendants violated their clearly established right to the custody and care of their daughter by failing to obtain plaintiffs' consent to Erika's ongoing medical and psychiatric treatment while in foster care, and refusing to apprise plaintiffs of the health care treatment or the condition of their daughter.

In support of their contention that defendants violated clearly established rights, plaintiffs to a great extent rely upon the Supreme Court's decision in *Parham v. J.R.,* 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979). However, while *Parham* reaffirms the well-settled rule that parents have a protected liberty interest in the care and custody of their children, the Court's holding underscores the limitations on parental rights when balanced against the government's interest in protecting children.

---

dy during a child abuse investigation. *van Emrik v. Chemung County Dep't of Social Serv.,* 911 F.2d 863, 865 (2d Cir.1990). *See also Chayo v. Kaladjian,* 844 F.Supp. 163, 169 (1994) (caseworker protected by qualified immunity).

**2.** The Second Circuit has considered three factors in determining whether a particular right was "clearly established":

1) whether the right in question was defined with "reasonable specificity";

2) whether the decisional law of the United States Supreme Court and the applicable circuit courts support the existence of the right in question; and

3) whether under preexisting law a reasonable official would have understood that his acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir. 1991).

In *Parham*, plaintiffs brought a *procedural* due process challenge to a Georgia statute that provided for the voluntary admission of children to mental hospitals by a parent or guardian. The *Parham* Court held valid a procedural requirement that some inquiry by a "neutral factfinder" be conducted to determine whether statutory requirements for admission of the child were satisfied and allowing the decision-maker authority to refuse to admit a child who does not satisfy medical standards for admission. *Id.* at 606–07, 99 S.Ct. at 2506–07. The Court reasoned that certain limitations on the right of parents to voluntarily commit their child to a mental hospital are legitimate because the "risk of error inherent in the parental decision to have a child institutionalized for mental health care is sufficiently great that some kind of inquiry" should be made to determine whether statutory requirements were met. *Id.* Thus, while *Parham* lends support to the principle that parents retain a protected liberty interest in the care and custody of their children, it does not establish a clear right to unfettered parental decision-making with regard to a child's care and custody.

Turning to Second Circuit case law, the court is unable, despite much effort, to find even a single case in this circuit creating a specific constitutional interest in the claims raised by plaintiffs. In fact, an examination of Second Circuit case law supports the opposite conclusion that under preexisting law a reasonable official would not have understood his acts to be an unlawful violation of plaintiffs clearly established rights. *van Emrik*, 911 F.2d at 866 (reasonable to remove child from the home during child abuse investigation when child suffered broken leg that was characterized by attending physician as "very suspicious" of child abuse, caseworkers consulted with superiors and obtained and executed a court order to remove the child only after the parents refused to permit temporary interruption of their custody); *Robison v. Via*, 821 F.2d 913, 922 (2d Cir.1987) (reasonable to remove children from parents' home "if the officials have been presented with evidence of serious ongoing abuse and therefore have reason to fear imminent recurrence"); and *Chayo v. Kaladjian*, 844 F.Supp. 163, 168 (S.D.N.Y.1994) (reasonable to remove children from parent's home and taking them to hospital for medical examination when child abuse report indicated that two of the children suffered skull fractures, even though no evidence of child abuse discovered at home).

The Second Circuit previously has commented that in deciding whether to remove a child from parental custody, caseworkers face a dilemma: if they choose to remove the child they risk being accused of infringing parental rights, while if they do not remove the child they risk accusations that they infringed the child's rights. The Second Circuit wrote that "it is precisely the function of qualified immunity to protect state officials in choosing between such alternatives...." *van Emrik*, 911 F.2d at 866.

Although the court is not bound by case law outside of the Second Circuit, the court finds persuasive a similar analysis undertaken by the Fifth Circuit in *Doe v. Louisiana*, 2 F.3d 1412 (1993). In that case the court concluded that although the Constitution guarantees a generalized right of family integrity under the Fourteenth Amendment, the contours of parents' substantive due process rights are not well-defined. Because of the paucity of fact-specific law, the court held that defendants could not have violated clearly established constitutional rights by coercing parents, falsifying evidence and making misrepresentations to the court in a child custody proceeding. *Doe*, 2 F.3d at 1417.

Similarly, in *Frazier v. Bailey*, 957 F.2d 920, 929 (1st Cir.1992), the First Circuit ruled that a social worker accused of ignoring exculpatory evidence and programming children to falsely accuse a parent of sexual abuse could not be said to have violated clearly established constitutional law. Thus the court reversed the trial court, which had refused to dismiss plaintiffs' claim on the ground of qualified immunity.

Viewing all the evidence and drawing all inferences in a light most favorable to plaintiff, the court concludes that plaintiffs have failed to meet their burden with regard to establishing that the constitutional right at issue was clearly established at the time of its alleged violation by government officials.

Because plaintiffs failed to establish the first prong of the analysis, the court need not proceed to the second prong to determine whether it was objectively reasonable for defendants to believe that their acts did not violate plaintiffs' clearly established rights. Thus, the court holds as a matter of law that defendants are entitled to qualified immunity from suit under 42 U.S.C. § 1983, and defendants' motion for judgment as a matter of law is hereby granted.[3]

### III. *CONCLUSION*

For the reasons stated, defendants' motion for judgment as a matter of law is granted. This case is dismissed in its entirety. The Clerk of the Court is directed to enter judgment against plaintiffs, and in favor of defendants.

It is so ORDERED.

---

**3.** Defendants also claim immunity from suit under New York State Social Services Law § 419. Section 419 provides, in pertinent part:

 Any person, official, or institution participating in good faith in the providing of a service pursuant to section four hundred twenty-four of this title, the making of a report, the taking of photographs, or the removal or keeping of a child pursuant to this title shall have immunity from any liability, civil or criminal, that might otherwise result by reason of such actions.
New York Social Services Law § 419.
 While the courts ruling in this matter obviates the need to reach defendants' alternative basis for immunity, the court notes that defendants' alternative argument is misplaced because the determination of the immunity to be accorded in a section 1983 suit is entirely a question of federal law. *Wood v. Strickland,* 420 U.S. 308, 314, 95 S.Ct. 992, 997, 43 L.Ed.2d 214 (1975). *See also Robison v. Via,* 821 F.2d at 922–23 ("Federal constitutional standards rather than state statutes define the requirements of procedural due process.") (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 540–41, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1985)).