United States Court of Appeals,

Fifth Circuit.

No. 96-11388.

A.J. WREN and Jerry Wren, Plaintiffs-Appellees,

v.

Jim TOWE, et al., Defendants-Appellants.

Dec. 30, 1997.

Appeal from the United States District Court for the Northern District of Texas.

Before REYNALDO G. GARZA, SMITH and WIENER, Circuit Judges.

PER CURIAM:

The case before this panel comes from the United States District Court for the Northern District of Texas, Judge Robert B. Maloney, presiding. The district court denied a motion for summary judgment made by the Defendants-Appellants, Jay Norris ("Norris") and Jim Towe ("Towe") on the issue of qualified immunity.

Background

In January of 1995, Norris was teaching a class in Basic Auto Theft to a group of students at the Arlington Regional Police Academy. During one of these lessons, Norris was informed by an eager student that he saw a Chevrolet pickup truck parked in the parking lot that was missing its dashboard Vehicle Identification Number ("VIN"). Norris, a member of the Dallas FBI Auto Theft Task Force and a Special Texas Ranger, began investigating the ownership of the truck.

1

Norris confirmed the absence of the dashboard VIN, and he conducted a computer database search on the truck. This search showed that the truck was registered to a dealer, though it did not have dealer tags, was not on a sales lot, and did not have a "for sale" sign. Norris ran a search on the license plates of the truck, which indicated a different VIN for the truck. Further investigation suggested to Norris that the truck had been totaled or salvaged at some point, but the truck did not appear to be a salvaged or rebuilt vehicle to Norris at that time.

Norris contacted the former owners of the truck, who explained that it had been stolen and burned, a claim confirmed by the insurance company. At a later time, the truck was owned by Texas Custom Trucks, a truck reconditioning[1] business which was under investigation by the Dallas FBI Auto Theft Task Force as a suspected "chop shop," a business which fashions reconditioned vehicles from stolen parts. The State of Texas has a procedure designed to foil would-be chop shop operators, in which reconditioned vehicles must be inspected by a law enforcement official and certified to be a legitimately reconditioned vehicle on Texas Department of Transportation ("DOT") Form 68-A (the "Form"). The Form 68-A on this truck was signed by Lt. Paul Pothen

---

[1]A reconditioned truck is an amalgam of body parts cannibalized from other trucks. This truck was formed from the cab of one truck attached to the frame and chassis of another. Body components on Chevrolet trucks made between 1988 and 1997 are interchangeable.

("Pothen"), a narcotics officer with the DeSoto, Texas, police. Randy Brown ("Brown"), the proprietor of Texas Custom Trucks, was a narcotics informant of Pothen's. Norris smelled collusion.

Pursuing his investigation further, Norris located a DOT Form 61, which revealed that the truck cab was owned by a William Searcy ("Searcy"). Searcy was contacted by Norris, and they spoke. The substance of the conversation with Searcy is a matter of dispute,[2] but it is undisputed that Searcy told Norris where he could find certain unique features on the cab (custom lights, etc.), and that GMAC held a lien on the truck.

Norris contacted GMAC, and was told that GMAC never repossessed Searcy's truck. He was also told that a lien was outstanding on the truck. The totality of all these circumstances led Norris to believe a crime may have been committed when Searcy sold the vehicle or its components without paying the GMAC lien.[3] Norris then contacted Towe, an officer of the Texas Department of

---

[2]For the purposes of this appeal, we cannot assume that, as Norris claims, Searcy said he sold the doors to another man, that the truck was more severely damaged then he presently claims, or that the lienholder on the truck, the General Motors Acceptance Corporation ("GMAC") repossessed the remainder of the truck. However, if we did assume that the conversation went the way Norris said it did, the conversation would add to Norris's suspicions.

[3]Norris apparently had in mind TEX.PEN.CODE § 31.03(c)(6)(B), which provides that a buyer of a wrecked vehicle is presumed to know that the vehicle is stolen unless the seller provides a title certificate showing that the vehicle is not subject to a lien. We need not and do not decide whether GMAC was the rightful owner at this time.

Public Safety ("DPS"), who was attached to the Dallas FBI Auto Theft Task Force. Norris asked Towe for assistance in this investigation, and Towe agreed to help.

On March 16, 1995, Norris and Towe located the truck and the purported owners, Jennifer and Jerry Wren, the Plaintiff-Appellees (the "Wrens"). The truck was parked in a public place, and Norris and Towe conducted a search.[4] No VIN was found in the glove compartment, and there were parts throughout the vehicle with dates earlier than the truck's manufacture. This, coupled with the suspicious Form 68-A and the other circumstances, led Norris and Towe to believe that the vehicle was the product of an illegal chop shop. Norris and Towe decided that seizure of the vehicle was necessary for a more extensive investigation and that the seizure was justified under the TEX.CODE OF CRIM.PROC. ART. 47.01, *et seq.,* and ART. 6687-1 § 49(c) (now codified as § 501.158 of the TEX.TRANS.CODE). The vehicle was seized, the Wrens were issued a receipt, and the requisite inventory form was filed with the Justice of the Peace Court. Upon further investigation of the vehicle, it was discovered that more confidential VINs were missing or obliterated. Norris and Towe thought this was inconsistent with a legitimately reconditioned truck.

A hearing was held on April 14, 1995, before Justice of the

---

[4]Norris and Towe assert that the Wrens consented to the search, but the Wrens now deny such consent. This matter will be dealt with in the analysis section.

Peace Roy Kurbin, pursuant to his authority and jurisdiction under TEX.CODE OF CRIM.PROC. ART. 47.01, *et seq.* After hearing the evidence, Judge Kurbin found that probable cause existed at that time, and awarded possession to the Dallas FBI Auto Theft Task Force. Subsequently, it became apparent that the truck was not the product of an illegal chop shop. The truck was held until August 23, 1995, when the county court awarded the vehicle to the Wrens, pursuant to an agreed order.

The Wrens filed suit against Norris and Towe[5] on July 6, 1995, asserting claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendment protections against unreasonable seizure, together with state law claims of trespass and conversion. Norris and Towe claimed both qualified and official immunity. Norris and Towe moved for summary judgment, and their motion was denied on October 2, 1996 by Judge Robert B. Maloney. Judge Maloney held that (1) the hearing before Judge Kurbin did not insulate the officers from liability, (2) there is a dispute over whether the Wrens consented to the search, and (3) viewed in the light most favorable to the Wrens, the evidence tended to show that Norris and Towe did not have probable cause to seize the truck.

Norris and Towe timely appealed, and the case now lies before

---

[5]A third defendant, Olen Manning, was dropped from this suit by the district court. The district court held that Manning had no part in the search and seizure, and hence could not be sued in this case. Summary judgment was granted in his favor, and this matter is not appealed.

this panel.

### Jurisdiction and Standard of Review

Generally, this Court will only hear appeals from final orders, and thus, we usually would not hear an appeal from a denial of summary judgment. *Naylor v. State of La. Dept. of Corrections,* 123 F.3d 855, 857 (1997). However, where summary judgment is denied in a civil rights action on the question of a government officer's immunity from suit, exceptions to this general rule exists. The collateral order doctrine is such an exception, and permits an interlocutory appeal in circumstances such as these. *Id.; see also Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Hale v. Townley,* 45 F.3d 914, 918 (1995).

Our review of the matter is limited by the extent to which the district court's actions were based upon an issue of law. *Johnson v. Jones,* 515 U.S. 304, 312-314, 115 S.Ct. 2151, 2156, 132 L.Ed.2d 238 (1995) (no immediate appeal of orders based on sufficiency of evidence). However, the existence of disputed issues of material fact does not necessarily preclude review of the case. "*Johnson* permits petitioner to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for the purposes of summary judgment met the *Harlow* standard of "objective legal reasonableness.' " *Behrens v. Pelletier,* 516 U.S. 299, ----, 116 S.Ct. 834, 842, 133 L.Ed.2d 773 (1996); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396

(1982); *Coleman v. Houston Indep. School Dist.,* 113 F.3d 528 (5th Cir.1997).

Many of the facts relating to the availability of qualified immunity are in dispute, but this alone does not prevent summary judgment. A district court's denial of summary judgment is not immune from interlocutory appeal simply because the denial rested on the fact that a dispute over material issues of fact exists. *Behrens,* 516 U.S. at ----, 116 S.Ct. at 842. To foreclose appeal, the disputed facts must be central to and not severable from the matter of qualified immunity. *Id.* In this case, we feel that we have jurisdiction based on the undisputed facts, even if we assume the resolution of disputed facts in the Wrens' favor. Our basis for this conclusion will be stated later.

The standard of review is as follows. We review a district court's denial of summary judgment *de novo*. *Coleman,* 113 F.3d at 533. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to summary judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears the burden of showing that there is an absence of evidence to support the non-movant's case, and after a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a

genuine issue for trial. *Coleman,* 113 F.3d at 533.

## Analysis

First of all, Norris is a law enforcement officer, and is entitled to qualified immunity. While it is true that Norris is retired from the Louisiana State Police, he is also presently a member of the Dallas FBI Auto Theft Task Force, an instructor at the Arlington Regional Police Academy and the Texoma Regional Police Academy, a Special Texas Ranger, and a Deputy U.S. Marshal. We do not see any reason to doubt Norris' statements that he acted as a member of the Dallas FBI Auto Theft Task Force. Therefore, as a law enforcement officer, Norris can be entitled to immunity.

There exists a dispute between the parties regarding whether or not the Wrens consented to the search. In the absence of consent, a search warrant, or exigent circumstances, a search of the Wrens' truck would be illegal. We will assume this matter in favor of the Wrens and assume that the search was illegal. The analysis does not stop there, however. Exclusion of the evidence found by Norris and Towe on the basis that they had no legal right to search the vehicle would, in effect, be an application of the exclusionary rule to this case. Such an application would be inappropriate. The Supreme Court has never applied the exclusionary rule to civil cases, state or federal. *City of Waco v. Bridges,* 710 F.2d 220, 225 (5th Cir.1983).

It is true that the exclusionary rule applies in forfeiture

proceedings. *Vance v. United States,* 676 F.2d 183, 186 (1982). This is because forfeiture is considered to be a criminal or quasi-criminal sanction. *Waco,* 710 F.2d at 225. This circuit has stated that because "forfeiture is clearly a penalty for transgressing criminal laws, exclusion of illegally seized evidence is thought to obtain the same deterrent effect as exclusion in a criminal proceeding." *Jonas v. City of Atlanta,* 647 F.2d 580, 587 (5th Cir. Unit B 1981).[6]

The rationale behind the exclusionary rule is "to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved," and application of the rule is "restricted to those areas where its remedial objectives are thought to be most efficaciously served." *United States v. Janis,* 428 U.S. 433, 446-447, 96 S.Ct. 3021, 3028-3029, 49 L.Ed.2d 1046 (1976) (citing *U.S. v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974)). Based on the deterrent rationale and the precedent, there is no reason to ignore and exclude the evidence found in the truck.

Also, regarding the seizure, TEXAS TRANSPORTATION CODE § 501.158 permits seizure of a vehicle with a missing VIN sticker without a

---

[6]It should be noted that the panel in *Jonas* expressed "grave reservations about whether, as a matter of law, police officers who illegally obtain evidence may use that evidence to establish a good-faith defense to a Section 1983 action." *Jonas,* 647 F.2d at 588 n. 12. These "reservations" are not in themselves binding precedent, and do not cover the situation in this case.

warrant. This section of the code has never been declared unconstitutional, and we do not pass on its constitutionality at this time. We mention this point only to further show that the law does not require exclusion of the evidence because of a lack of a warrant.

Given the facts known both before and after the search, it cannot be said that Norris and Towe's belief that something illegal was happening was unreasonable. It is the information known at the time of seizure and the reasonability of the inferences drawn from such information which is the key. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039-3040, 97 L.Ed.2d 523 (1987); *Hunter v. Bryant,* 502 U.S. 224, 227-228, 112 S.Ct. 534, 536-537, 116 L.Ed.2d 589 (1991).

Further, the district court assumed that the execution of a Form 68-A on a reconditioned vehicle establishes a presumption that the vehicle is legitimate. The district court felt that Norris and Towe's knowledge of the existence of the Form did not argue well for the reasonability of their inferences. This was in error. While the Form is definitely useful evidence in establishing legitimacy, we know of no precedent that turns the existence of a Form 68-A into a presumption of legitimacy. The Form merely requires that a law enforcement officer certify that he inspected the vehicle and that he found the manufacturer's number to be the VIN. The existence of the Form does not undermine Norris and

10

Towe's case.

At this point, now that we have decided that all of the information known to Norris and Towe at the time of the seizure may be considered in determining the reasonability of their actions, we turn to the standards for qualified immunity, and how those standards apply to this case. Qualified immunity shields government officials performing discretionary functions from personal civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person should have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Qualified immunity is immunity from suit altogether, not just a defense to liability. *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815-2816. The purpose of qualified immunity is to shield law enforcement officers from the burdens of fighting lawsuits which arise from the good-faith performance of their duties. *Hunter,* 502 U.S. at 227-228, 112 S.Ct. at 536-537. Therefore, the issue of qualified immunity must be settled at the earliest possible point in litigation. *Id.*

As stated, a court must inquire into the "objective legal reasonableness" of an officer's actions in cases such as this. *Behrens,* 516 U.S. at ----, 116 S.Ct. at 838. There is a two-step analysis for determining the existence of qualified immunity. First, has a clearly established constitutional right been violated? *Mangieri v. Clifton,* 29 F.3d 1012, 1016 (5th Cir.1994).

11

If the answer is yes, we analyze the situation and assess the objective reasonableness of the officer's actions. *Id.*

Qualified immunity protects government officials "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1183 (5th Cir.1990) (citing *Anderson,* 483 U.S. at 638, 107 S.Ct. at 3038). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1100, 89 L.Ed.2d 271 (1986). If reasonable public officials could differ on the legality of a defendant's actions, the defendant is entitled to immunity from suit. *Pfannstiel,* 918 F.2d at 1183.

The key point here is not whether Norris and Towe had probable cause to seize the truck, and the reliance of the district court on this point is in error. It is true that after the initial seizure, the legitimacy of the reconditioned truck was established. This alone does not open Norris and Towe to liability. Law enforcement officers are only human, and inevitably, accidents and mistakes of judgment will happen, and these mistakes alone do not open officers to personal liability.

This circuit has dealt with such matters in two cases similar to this one: *Bigford v. Taylor,* 834 F.2d 1213 (5th Cir.1988) ("*Bigford II* "), and *Bigford v. Taylor,* 896 F.2d 972 (5th Cir.1990)

12

("*Bigford III* ").[7]  In *Bigford II*, a truck was seized by law enforcement officers and the owner filed a civil rights claim.  The suspicions of the Sheriff's Deputy in *Bigford II* turned out to be unjustified, but at the time the Deputy cited the following to support his suspicions:  the Federal Inspection Safety Sticker was missing from the inside of the door, the Deputy thought the rivets affixing the VIN plate to the dash were tampered with, the Deputy thought the truck's body did not match its frame, and he could not find the VIN stamped on the engine (it was there, and later found). *Bigford II,* 834 F.2d at 1215-1216.

Further, in *Bigford II,* the Deputy, using a computer database, found that the truck was never listed as stolen.  Also, the plaintiff established a clear chain of title from the original owner to himself.  Still, the truck was seized, held in an impound lot for three years, and reduced to a pile of scrap by Hurricane Alicia.  *Id.* at 1216-1217.  This Court found that Bigford's rights were violated, that no probable cause existed, and remanded the case for further proceedings.  *Id.* at 1223.

After a trial, the case returned as *Bigford III.*  This Court undertook the second part of the analysis, and examined qualified immunity.  This Court noted that the probable cause standards for

---

[7]*Bigford I,* 784 F.2d 1111 (5th Cir.1986) was an earlier unpublished case sending the matter to trial.  *Bigford II* was remanded and tried on the merits, and the case went back up to this circuit as *Bigford III.*

reasonableness differ from those for qualified immunity. After analyzing the facts, this Court concluded that the "fact situation is too close to say that these conflicting indications could not have led a reasonable officer to believe that there was probable cause to seize the truck," and the officer was held to be entitled to immunity from liability. *Bigford III,* 896 F.2d at 975.

Norris and Towe had far more reasons to be suspicious than the Deputy in the *Bigford* cases. If *Bigford* was an example of a close case which allowed for immunity, this case surely allows for immunity. Norris and Towe knew that various VINs were missing, that the truck was registered to a dealer, that the truck's present condition did not match its damage record, that the truck was reported stolen, that the truck was sold with a lien on it, that the Form 68-A was suspicious, and that the truck was linked to an alleged illegal chop shop. While these facts have been explained, at the time, it can hardly be said that a suspicion based on these facts was unreasonable.

The Wrens also allege state law claims for trespass and conversion, and Norris and Towe invoke official immunity under state law for these claims. We have jurisdiction over these claims as we do the federal claims. *See Mitchell,* 472 U.S. at 524-530, 105 S.Ct. at 2814-2818. Texas law of official immunity is substantially the same as federal qualified immunity law. *Cantu v. Rocha,* 77 F.3d 795, 808 (5th Cir.1996).

14

Texas law provides for immunity from suit for government officials for matters arising from the performance of their discretionary duties, as long as they are acting in good faith and within the scope of their authority. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). As stated, Norris and Towe's actions were in good faith, and their actions were obviously within their scope of authority. Also, the Wrens have not shown that Norris and Towe's actions were unreasonable, as is necessary. *Cameron County v. Alvarado,* 900 S.W.2d 874, 880 (Tex.App.—Corpus Christi 1995, writ dism'd w.o.j.). Hence, Norris and Towe are immune from suit in the state claims as well.

## Conclusion

The district court erred in denying summary judgment in favor of the Defendants-Appellants, for the reasons listed. Therefore, we REVERSE and REMAND the decision of the district court, and we order the district court to render judgment in favor of Norris and Towe, granting them qualified immunity.

REVERSED AND REMANDED.

15