**James and Una STRAIN, Plaintiffs,**

**v.**

**KAUFMAN COUNTY DISTRICT ATTORNEY'S OFFICE, Lisa Gent, Louis Conradt, Texas Department of Regulatory and Protective Services, Joyce Pruitt, Lisa Black, Pamela Sweeney, Rhonda Jones, Shirley Dominey, Virginia Greenwood, Margaret Spain, Catherine Howard, Wilbur F. Howard, James Fangue, Patricia Fangue, Paul Caesar, David**

---

McKeon, d/b/a McKeon Counseling Associates, Texas Department of Human Services, Kaufman County, James Nixon, Rodney Kincaid, Pete Hammock, Ivan Johnson, Kaufman County Child Welfare Board, Ruby Snow, Donna Durham, Andrea Brantley, Billie J. Hans, Steve Rhodes, Charlotte McDougald, Mike Sculin, Barbara McBurney, Neldajo Mathison, Defendants.

No. 3:95–CV1800.

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 23, 1998.

Kenneth Byford and Tisha L. Tanaka of Byford & Associates, P.C., Dallas, TX, for plaintiffs.

Stephen Cass Weiland, Capshaw, Weiland, Goss & Bowers, L.L.P., Dallas, TX, for Kaufman County defendants.

Dan Morales, Attorney General of Texas and James B. Pinson, Assistant Attorney General, Austin, TX, for State defendants.

Randall Lee Roberts of Blalack & Williams, P.C., for Howard defendants.

David S. Mallard, Law Offices of David S. Mallard, Terrell, TX, for Margaret Spain and McKeon defendants.

Melinda Lee Eitzen, Clark, West, Keller, Butler, & Ellis, Dallas, TX, for Fangue defendants.

Jonathan B. Skidmore, Fulbright & Jaworski, Dallas, TX and Kerry Lawson Pedigo, U.S. Department of Justice Tax Division, Dallas, TX, for defendant Paul Caesar.

## ORDER

BILBY, Senior District Judge.

### I. Introduction

Before the Court are defendants' motions for summary judgment. Defendants Lisa Black, Pamela Sweeney, Rhonda Jones, Joyce Pruitt, Shirley Dominey, and Virginia Greenwood (hereinafter the "State Defendants") assert that they are entitled to qualified immunity. Notwithstanding, they also contend that Plaintiffs fail to: (1) state of causes of action under either 42 U.S.C. § 1983 or the RICO Act or (2) satisfy the elements for a claim of malicious prosecution. Defendant James Nixon, Rodney Kinkaid, Pete Hammock, Ivan Johnson, Neldajo Mathison and Barbara McBurney (the "County Defendants") move for summary judgment also arguing that Plaintiffs' claims fail to state a claim for which relief can be granted and Plaintiffs' lack standing to assert the RICO claims. Prior to the filing of the summary judgment motions, Defendants Mathison and McBurney moved to dismiss this matter against them based on untimely service of process and failure to adequately plead their § 1983 and RICO claims.

Plaintiffs dispute these contentions and argue that they have met their evidentiary burden and the Second Amended Complaint satisfies the respective pleading requirements. Plaintiffs also assert that service was timely and if not, good cause exists to overlook any defect.

### II. Background

Plaintiffs' Complaint arises from a charge of child abuse against father James Robert Strain and grandmother Una Strain concern-

ing Christa Strain who was a minor at the time. Christa was subsequently removed from the home and placed in foster care. The accusations of physical abuse led to the institution of civil and criminal proceedings in the 86th Judicial District of Kaufman County, Texas. The civil proceedings involved the custody and support of Christa and the criminal proceedings involved felony charges of injury to a child against Plaintiffs. The civil and criminal proceedings were resolved through mediation, resulting in the dismissal of the criminal proceedings. After participation by Plaintiffs in family counseling, Christa was returned to their custody.

On August 11, 1995, Plaintiffs filed suit against various defendants asserting violations of civil rights, 42 U.S.C. § 1983 and Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, conspiracy under 42 U.S.C. § 1985; and common-law malicious prosecution. On October 31, 1995, the State Defendants and the Texas Department of Protective and Regulatory Services and the Texas Department of Human Services filed motions to dismiss. On July 29, 1996, The Honorable Jorge A. Solis granted in part, and denied in part, the State Defendants' Motion to Dismiss. Judge Solis dismissed in relevant part, Plaintiffs' § 1983 claims against the state agencies, § 1983 fraud claim against Black, Pruitt, Sweeney, Jones, Dominey and Greenwood; the claims for injunctive and declaratory relief against the State Defendants in their official capacity; the 42 U.S.C. § 1985 claim; and the RICO claims against all defendants with permission to amend as to the RICO claims against Black, Pruitt, Sweeney, Jones, Dominey, and Greenwood. Pursuant to court practice, Judge Solis ordered the Plaintiffs to file a detailed "RICO Case Statement."

On August 26, 1996, Plaintiffs filed their RICO Case Statement. On September 10, 1996 the State Defendants filed a motion to dismiss the RICO claim. On January 2, 1997, the case was transferred to this Court. Based on the 12(b)(6) standard of review, the Court denied the State Defendants' motion on February 7, 1997.

On June 10, 1997, the Court granted Plaintiffs' motion to amend joining Kaufman County; the Kaufman County Commissioners in their official and individual capacities: James Nixon, Rodney Kinkaid, Pete Hammock and Ivan Johnson; Kaufman County Child Welfare Board in their official and individual capacities: Ruby Snow, Donna Durham, Andrea Brantley, Billie J. Hans, Steve Rhodes, Charlotte McDougald, Mike Sculin, Barbara McBurney and Neldajo Mathison. On July 2, 1997, Plaintiffs filed their Second Amended Complaint.

On July 3, 1997, Defendants Nixon, Hammock and Kinkaid were served. On July 25, 1997 these Defendants filed a motion to dismiss for lack of standing. The motion was denied by this Court by its Order signed September 11, 1997.

Plaintiffs attempted service of the Summons and the Second Amended Complaint on Defendants Kaufman County, Snow, Durham, Brantley, Hans, Rhodes, McDougald, Sculin, Mathison and McBurney on July 9, 1997. When Answers were not filed, Plaintiffs took default against these Defendants on August 4, 1997. The Court granted Defendants' motion to vacate and set aside the defaults on September 10, 1997 for failure to perfect proper service. The Court gave Defendants twenty days from the date of proper service to file an Answer or otherwise respond. Defendants were served on October 27, 1997.

## III. Discussion

Plaintiffs allege that the defendants violated their constitutional rights when they removed Christa from their home and prosecuted James Strain without probable cause. Plaintiffs also allege that defendants have stolen and manipulated federal and state matching funds and used Plaintiffs' child support payments for Defendants' personal use. According to Plaintiffs, these acts defrauded the federal government through the falsification of documents in order to procure AFDC, SSI and Medicare benefits which were not used for Christa. Plaintiffs allege that these acts are a continuing threat and exhibit a pattern of racketeering activity because these procedures are uniformly used against all children within their care.

Defendants assert that the acts complained of were appropriate, discretionary decisions based on probable cause. Defen-

dants argue that Plaintiffs have not presented any admissible evidence to establish a pattern of racketeering activity or that even such an enterprise exists. The County Defendants contend that Plaintiffs lack standing to assert claims of misappropriation of funds under RICO.

Summary judgment is proper when the pleadings and evidence establish that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Once the moving party establishes that there is an absence of evidence to support the nonmovant's case, the burden shifts to the nonmoving party to come forward with "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must not rest upon the allegations or denials of its pleadings or assertions unsupported by facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Rather, the non-movant must adduce evidence, not merely argument, in response to a movant's properly supported motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Foval v. First Nat'l Bank of Commerce in New Orleans*, 841 F.2d 126, 129 (5th Cir.1988). For summary judgment purposes, relevant evidence consists of the parties' affidavits and supporting documents, to the extent that such affidavits comport with the requirements of Fed.R.Civ.P. 56(e). Conclusory allegations are insufficient to withstand summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th cir.1996).

Here, the Court concludes that Plaintiffs have failed their burden. The State Defendants are entitled to qualified immunity with regard to the § 1983 and malicious prosecution claims. The County Defendants are entitled to judgment as a matter of law with respect to the § 1983 claim Additionally, there is no evidence to support any RICO violations. As such, the RICO claim fails as a matter of law.

### A. Qualified Immunity and the State Defendants

Qualified immunity shields government officials performing discretionary functions from personal civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The courts employ a two-step analysis for determining the existence of qualified immunity. *Wren v. Towe*, 130 F.3d 1154, 1159 (5th Cir. 1997). The first step is to determine whether a clearly established constitution right has been violated.

Plaintiffs urge the Court to find that defendants violated their clearly established right to family integrity. The Fifth Circuit addressed this right in a factually similar case. In *Doe v. Louisiana*, 2 F.3d 1412 (5th Cir.1993), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994), the father brought suit under § 1983 claiming his Fourteenth Amendment rights were violated by state employees during a child sexual abuse investigation concerning him and his daughter. The Fifth Circuit held that the case worker and her supervisor were entitled to qualified immunity because the "nebulous" right to family integrity is not sufficiently particularized that a reasonable state actor would understand that his or her conduct violated that right at the time of the alleged conduct. *Id.* at 1418. The Court finds it significant that *Doe* was decided three months before the conduct at issue occurred in this case.

In *Kiser v. Garrett*, 67 F.3d 1166 (5th Cir.1995), the Fifth Circuit had the opportunity to revisit this "nebulous" constitutional right to family integrity. In that case, the parent brought suit against state employees after the child was removed from the home during an investigation of possible child abuse. Again, the Fifth Circuit held that the state actors were entitled to qualified immunity finding there was no clearly established right to family integrity. *Id.* at 1173. *Kiser* noted:

> it is apparent that, although a substantive due process right to family integrity has

been recognized, the contours of that right are not well-defined, and continue to be nebulous, especially in the context of a state's taking of temporary custody of a child during an investigation of possible parental abuse. Even assuming that such a right exists under the circumstances involved here, it certainly was not clearly established when the [state employees] engaged in the conduct at issue.

*Id.*

■ This Court finds that neither *Doe* or *Kiser* provide much guidance to state employees charged with investigating possible child abuse. The Court concludes, that at the time of Defendants' conduct, the right to family integrity was ill-defined such that these state actors were not on notice that their conduct unlawfully violated Plaintiffs' constitutional rights. On this basis alone, the State Defendants are entitled to qualified immunity.

■ Assuming *arguendo* that the right to family integrity was a clearly established right, it would be of no moment. The second step in qualified immunity analysis requires an assessment of the objective legal reasonableness of the state actor's conduct under the circumstances. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Wren,* 130 F.3d at 1159. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

■ Plaintiffs argue that Defendants lacked probable cause to take the actions they did and that their conduct was not reasonable. In the Fifth Circuit, the "objective legal reasonableness requirement for qualified immunity is not equivalent to the reasonableness component of probable cause." *See Bigford v. Taylor,* 896 F.2d 972, 975 (5th Cir.1990). The relevant question is whether a reasonable state actor could have believed, in light of clearly established law and the information they possessed, that their conduct was lawful. *Id.* The Court concludes that under this standard, it was objectively reasonable for the defendants to believe Christa had been abused and were

justified in taking the action they did. The Court bases its decision on the following.

On December 6, 1993, Defendant Joyce Pruitt, a child protective services worker at the Kaufman County office of TDPRS received a call from the Sheriff Department's child abuse hotline reporting a thirteen-year old runaway girl whom Pruitt learns is Christa Strain. The report alleged physical abuse of a girl by her father since the age of 7. Pruitt contacted her supervisor, Defendant Lisa Black, to inform her of the report. Black instructed Pruitt to go to the Sheriff's Department and to meet with Christa and her parents.

Pruitt interviews Christa and asks Christa why she ran away. Christa responds that her father handcuffed her to her bed, deprived her of food and locked her in her room for days at a time. Christa also reports that one of the times she was handcuffed, it was for three days during the summer. Pruitt observes that Christa is very thin and appears malnourished.

Pruitt next interviews James and Una Strain. James Strain informs Pruitt that Christa had been removed from her mother at the age of four or five due to severe neglect. He explains that his parents have legal custody of Christa and he helps them raise her. James Strain admitted that he handcuffed Christa to the bed. Una Strain told Pruitt that Christa was a thief and a bad child. The Strains assert that they have tried everything to control Christa including taking her to counseling and taking her to juvenile probation and asking them to lock her up. They also asked Sheriff Harris to put Christa in jail. The Strains told Pruitt that they took these measures because Christa steals, lies and has run away two times. Una Strain recounted a time when Christa took a half gallon of ice cream and hid it under her bed. Una Strain also informed Pruitt that she recently whipped Christa with a belt for not cleaning her room and for talking on the phone to a friend of whom the Strains did not approve. The Strains admitted that they locked Christa in her room because they felt it was the only way they could control her. The Strains then asked Pruitt, "Where do we sign, you can have

her." Several times during this interview, the Strains began yelling. During one such incident, an officer came into the room and threatened James Strain with custody if he did not calm down.

Pruitt called Lisa Black and informed her of these facts. Pruitt also told her that Christa did not want to go home and the Strains did not want her there. Black had Pruitt call a shelter which agreed to accept Christa.

Pruitt completed an Emergency Removal Form which the Strains signed. The Strains agreed to meet with Pruitt the next day and to bring a week's supply of clothes. At the meeting the following day, the Strains again admitted to handcuffing Christa.

Pruitt obtained Christa's medical records from the Kaufman Clinic. Dr. Ellis had documentation regarding Christa and he spoke of malnutrition. Dr. Vasani conducted an evaluation of Christa and was upset by her physical condition. He reported that Christa told him she had to ask permission to eat, was locked in her room on a consistent basis, had been handcuffed and that the Strains would place food just out of Christa's reach and not let her have it. Dr. Vasani told Pruitt that Christa was in the tenth percentile of weight for her height and stated the he too, believed Christa was malnourished.

Pruitt called Angie Brown at juvenile probation to inquire about the Strain family. Brown confirmed that the Strains had brought Christa into her office about three weeks earlier wanting Brown to lock Christa up for a week because she had stolen something from a store and needed to pay the price for her actions.

On December 10, 1993, Pruitt made arrangements to place Christa in foster care. On December 14, 1993, Pruitt called Dr. Kegerreis to inquire about his counseling of Christa. Dr. Kegerreis revealed that he knew about Christa being handcuffed to the bed.

On December 8, 1993, Pruitt executed an affidavit that was filed with her Original Petition in Suit Affecting the Parent–Child Relationship in Cause No. 46,756 in the 86 District Court of Kaufman County, Texas. On December 27, 1993, the presiding judge signed Temporary Orders in Suit Affecting the Parent–Child Relationship finding that "there is an immediate danger of the physical health or safety of the child/children and it is therefore not in the child's best interest to remain in the home," that "all reasonable efforts consistent with time and circumstances and pursuant to 42 U.S.C. § 671(a)(15) and § 672(a)(1) have been made by Petitioner to prevent or eliminate the need for removal of the child from the home, but it is not in the child's best interest to return home," and that "Petitioner has the authority to remove and take possession of the child under Chapter 17 of the Texas Family Code and has taken possession of the child with the approval of this Court." See Motion for Summary Judgment of Defendants Catherine Howard and Wilber F. Howard, Ex. H–7 at 1–2.

TDPRS was appointed Temporary Managing Conservator of Christa and her grandparents. Walter and Una Strain were ordered Temporary Possessory Conservators in Cause No. 46,765. Criminal proceedings were instituted against James and Una Strain in the 86th Judicial District Court. See State of Texas v. James R. Strain, Cause No. 17,787 and State of Texas v. Una C. Strain, Cause No. 17,788.

The Court concludes that based on these facts, the objective legal reasonable requirement is satisfied. The State Defendants investigated Christa's claims and followed up on leads provided by the Strains. The Strains themselves, corroborated Christa's claim of being handcuffed to a bed and locked in her room. The probation office corroborated the Strains' statements to Pruitt. Christa's medical records confirmed Pruitt's concern of malnutrition. The Court concludes that based on these facts, the State Defendants are entitled to immunity from this suit.

■ Similarly, Defendants are entitled to qualified immunity from Plaintiffs' malicious prosecution claim. Plaintiffs complain that the State Defendants had a duty to investigate the actions of the Plaintiffs before filing criminal charges against them. Plaintiffs, however, do not know if these defendants were involved in the initiation of the criminal cases. See James Strain's Depo. at 46, Ex.

S–3; Una Strain's Depo. at 35–37, ex. 2–4; and Plaintiffs' Objections & Response. State Defendants' First Set Interrogs. at 11.

The facts cited above also establish that probable cause existed to believe that Christa had been abused and that James Strain had done it. Notwithstanding, under § 262.003 of the Texas Family Code a person who takes possession of a child without a court order is immune from civil liability if, at the time possession is taken, there is reasonable cause to believe that there is an immediate danger to the physical health and safety of the child. Under § 261.106(a) of the Texas Family Code, a person acting in good faith who reports or assists in the investigation of a report of alleged child abuse or neglect or who testifies or otherwise participates in a judicial proceeding arising from a report, petition, or investigation of alleged child abuse or neglect is immune from civil or criminal liability that might otherwise be incurred or imposed. Additionally, under § 20.061 of the Human Resources Code "a department employee ... who performs a departmental duty or responsibility is immune from civil or criminal liability if the person acted in good faith and in the course and scope of the person's duties and responsibilities." This is clearly the case here.

■ In Texas, the "law of official immunity is substantially the same as federal qualified immunity." *Wren*, 130 F.3d at 1160. State actors are immune from suit for matters arising from the performance of their discretionary duties, as long as they are acting in good faith and within the scope of their authority. *Id.* Based on the facts, the State Defendants acted in good faith when they took action to remove Christa from the Strain home. Although Plaintiffs attempt to argue otherwise, reasonable minds could not differ as to this conclusion.

■ The Court notes that the malicious prosecution claim also fails as a matter of law. An essential element of malicious prosecution is the termination of such proceedings in the Plaintiff's favor. *KT Bolt Manufacturing Co. v. Texas Electric Cooperatives, Inc.*, 837 S.W.2d 273, 275 (Tex.App. 1992, writ denied). It is uncontested that the underlying court proceedings were resolved through mediation and a settlement agreement formalized. The fact that Plaintiffs had to take steps to ensure the Agreement was performed, does not transform the outcome into a favorable termination. Since resolution of the civil proceedings through agreement or compromise defeats this essential element, the claim is without merit on this basis alone. *See, e.g., James v. Brown*, 637 S.W.2d 914, 919 (Tex.1982).

*B. Section 1983 and the County Defendants*

■ The Second Amended Complaint alleges that the County Defendants improperly diverted child support payments to themselves and away from the Attorney General of the State of Texas. Specifically, Plaintiffs allege the County Defendants:

(1) conspired with the other named Defendants in this lawsuit to divert child support payments to bank accounts controlled by them for their own personal use;

(2) conspired with the other named Defendants in this lawsuit to receive Federal Funds without putting up matching funds to qualify for such relief;

(3) conspired with other named Defendants herein to falsely and illegally report to State and Federal authorities that no child support was being paid by Plaintiffs (and every other parent whose child was in state custody in Kaufman County) so that all of the Defendants named herein could receive more federal monies for the minor children in their care. In other words, if the Defendants accurately reported the child support payments, they would not have been qualified to receive federal funds or would have received far less money;

(4) conspired with the other named Defendants to steal monies from the named Plaintiffs herein—to wit—their child support payments;

(5) conspired with other named Defendants, merely for political gain, to pad their working budgets so as to further their political careers and economic futures.

Second Amended Complaint at ¶ 5.04. Plaintiffs allege that these acts deprived them "of due process, the right to their property, namely money; and the right to liberty,

namely freedom of interference with their personal family relations." *Id.* at ¶ 5.06.

This claim fails as a matter of law. Plaintiffs have presented no competent evidence that the County Defendants were in a position to deprive Plaintiffs of a constitutional right. None of these defendants have prosecutorial authority or have jurisdiction to decide parental rights. Plaintiffs's allegations concerning the theft of their child support payments is unfounded. *See also* the RICO section, *supra.* There is no evidence, other than conjecture, that these defendants conspired to further their political careers and economic futures. This claim is based on hyperbole and conclusory allegations and shall be dismissed.

### C. RICO Claims

Plaintiffs' RICO claim alleges that "they have been deprived property and liberty interests by Defendants in pursuit of their racketeering enterprise." Plaintiffs contend that all of the defendants applied for AFDC, SSI funds, and Medicaid on behalf of Christa Strain and used those funds for the benefit of their own personal use or for improper office expenses. Plaintiffs contend that Defendants conspired to engage in illegal racketeering by fraudulent procuring children for funds. Specifically, Plaintiffs allege:

(1) There are at least 14 children who were a part of the scheme;

(2) Lisa Black worked at three other locations in the state. At each of these locations, the manner in which the bookkeeper handled the child support scheme worked was the same;

(3) On each child support payment paid by James Strain, the pattern was exactly the same;

(4) Each year, the appropriation from Kaufman County to the Child Welfare Board was the same;

(5) The monies that were taken from Kaufman County to the Child Welfare Board was the same;

(6) The Defendants reported "0" income from each of the children in State custody.

(7) All child support payments went directly, without benefit of being sent to the Attorney General of the State of Texas, for an offset of corresponding federal AFDC funds, to the Kaufman County Child Welfare Board accounts;

(8) Kaufman County's budget was supplemented by the federal AFDC payments. Kaufman County, therefore, was not required to fund a county-run operation;

(9) the Kaufman County Child Welfare Board Members controlled their day to day activities;

(10) The Commissioners knew of the budget and federal funds; and

(11) The Kaufman County Commissioners received a salary for their services from the County accounts.

*See e.g.,* Plaintiffs' Brief in Support of Plaintiff's Response to State Defendants' Motion for Summary Judgment at 17–18.

Defendants argue that Plaintiffs misstate the law and offer nothing more than conclusory allegations. According to Defendants, Plaintiffs failed to establish a pattern of racketeering activity or the existence of an enterprise. In addition, the County Defendants contend that Plaintiffs lack standing because Plaintiffs have not been injured in their business or property as required under 18 U.S.C. § 1964(c).

 The RICO Act, 18 U.S.C. § 1961–1968, creates a civil cause of action under section 1964(c) for those injured by violations of section 1962(a)–(d). Section 1962(a)–(d) offenses all have the same three elements:

(1) a person who engages in

(2) a pattern of racketeering activity;

(3) connected to the acquisition, establishment, conduct, or control of an enterprise. *Calcasieu Marine National Bank v. Grant,* 943 F.2d 1453, 1461 (5th Cir.1991). A RICO conspiracy claim based on section 1962(d) also requires the existence of an enterprise. *Id.*

### 1. Person

RICO defines "person" broadly to include "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). The RICO person must be "either one [who] poses or has posed a continuous threat of engaging in acts of racketeering ..." *Delta Truck v. J.I. Case Co.,* 855

F.2d 241, 242 (5th Cir.1988), *cert. denied,* 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989). The "continuous threat" requirement may not be satisfied if no more is pled than that the person has engaged in a limited number of predicate racketeering acts. *Id.* Racketeering Activity is defined in relevant part as (A) state law felonies; (B) acts indictable under several section of 18 U.S.C. relating to mail fraud (§ 1341), wire fraud (§ 1343); (C) acts indictable under sections of 29 U.S.C. and (D) offenses involving fraud under Title 11, in the sale of securities. 18 U.S.C. § 1961(1). The named individuals constitute "persons" therefore, Plaintiffs have satisfied this element.

### 2. *Pattern of Racketeering Activity*

A RICO plaintiff must establish that there was a "pattern of racketeering activity." 18 U.S.C. § 1962; *Delta Truck,* 855 F.2d at 242. A pattern of racketeering activity "requires at least two acts of racketeering." 18 U.S.C. § 1961(5). It also requires "continuity and relationship." *Delta Truck,* 855 F.2d at 242.[1] The "continuity" element is "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Landry v. Air Line Pilots Association International AFL—CIO,* 901 F.2d 404, 432 (5th Cir.), *cert. denied* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990). Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. *Landry,* 901 F.2d at 432 n. 108. The "relationship" element is defined as "criminal conduct [which] forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 432.

Plaintiffs fail to satisfy this element. The conduct in this case relates to Plaintiffs' conclusory allegations that the defendants stole federal monies. The alleged misconduct arises from the removal of Christa from the Strain home. These acts, even if wrongful, do not constitute a pattern of racketeering activity. No admissible evidence has been submitted which establishes the necessary relationship between the isolated events in this case and the purported conspiracy to misappropriate public funds. Nor do they establish that the defendants operate as a long-term association that exists for criminal activity. These Defendants carried out their actions over a short period of time to achieve an objective set by court orders.

Child support payments were collected for the support of the minor child. Allegations by Plaintiffs that the Defendants stole Plaintiffs' child support payments are not supported by their proffered evidence. The Court agrees with the County Defendants that 42 U.S.C. § 603(a)(5) does not mandate that the State must contribute 50% of the total care cost of the child for emergency aid to dependent children in order to qualify for federal funds. Additionally, there is no evidence that Kaufman County is responsible for making this contribution.

Plaintiffs cite to their exhibit 28, paragraph 1331 for authority. Exhibit 28 is an unauthenticated document presumably from a policy manual of the Texas Department of Human Services. The cited provision only discusses in general terms, the use of local public funds and the fact that a child's AFDC or state-paid foster care payments must be spent for the child. It does not provide support for Plaintiffs unfounded belief that Kaufman County is responsible for the 50% contribution and has therefore defrauded the federal government.

---

1. In *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350 (5th Cir.1989), a case relied upon by Plaintiffs, the Fifth Circuit held that two "related" acts of mail fraud constitute a "pattern." *Id.* at 1355. The Fifth Circuit now recognizes that the Supreme Court in *H.J., Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) narrowed the *R.A.G.S. Couture* definition. *Smith v. Cooper/T. Smith Corp.,* 886 F.2d 755, 756 (5th Cir.1989); *Landry v. Air Line Pilots Association International AFL—CIO,* 901 F.2d 404, 432 (5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990). Accordingly, to prove a pattern of racketeering activity a plaintiff must show that the racketeering predicates are related and that they amount to pose a threat of continued criminal activity. *H.J. Inc.,* 492 U.S. at 237, 109 S.Ct. at 2900.

Plaintiffs also argue that section 231.0011 of the Texas Family Code requires Kaufman County to make the contribution. This Section describes an integrated system for child support enforcement, not an obligation on the part of counties to contribute 50% of the total care cost of a child in the state's custody. Plaintiffs cite portions of the support enforcement provisions of 231.0011 and then make the quantum leap that the defendants:

> side stepped these requirements of reporting child support, took AFDC funds without deducting the child support from federal aid, and took the child support directly. This action had the effect of raising the amount of federal aid the Kaufman County Child Welfare Board had in its accounts— as well as the Kaufman Child Welfare Board receiving directly, all child support payments directly into its account.

Plaintiffs' Response to County Defendants at 10. Without further explanation or analysis, Plaintiffs merely cite to their exhibits 21 and 29 which appear to be bookkeeping ledgers. The Court cannot fill in the gap Plaintiffs have left here. There must be some logical, causal connection between argument and the supporting evidence. The Court is at a loss as to what that logical connection is.

Another example, Plaintiffs point to a $5,000 bequest from the County Commissioners to the Child Welfare Board. Plaintiffs assert that this evidence proves that Kaufman County only contributed "a mere $5,000" to the Child Welfare Board with no other matching funds made. This allegation has no evidentiary support. On the other hand, Defendant Johnson testified at deposition that the $5,000 allocation from the County to the Welfare Board comes from the Commissioners' discretionary fund to the Child Welfare Board to pay for items for the welfare of the children that can not otherwise be purchased with state funds. *See* Plaintiffs' Ex. 25, Johnson Depo. at 18.

Plaintiffs deposition testimony also fails to describe any racketeering activity or to present admissible evidence to support their claims. For instance, Plaintiffs do not know if the defendants had even applied for AFDC benefits or had anything to do with apply for AFDC. James Strain Depo., Vol. I at 65; Una Strain Depo., Vol. II, at 11, 31. The same goes for the SSI benefits or Medicaid

funds. James Strain Depo., Vol. I at 65, 67; Una Strain Depo, Vol. II. at 12–15, 32. Plaintiffs have no knowledge how the defendants utilized federal funds. James Strain Depo., Vol. I at 67; Una Strain, Depo., Vol. II at 32. They have no personal knowledge that defendants used public monies to pay for personal bills. James Strain Depo., Vol. I at 68; Una Strain Depo., Vol. II at 32. Rather, Plaintiffs "surmise" that the County funding came from some unidentified account containing Plaintiffs' money, along with federal and state funds. Una Strain Depo., Vol. II at 32. As such, there is no evidence of one predicate act to support Plaintiffs' RICO allegations.

Indeed, Plaintiffs deposition testimony and supporting affidavits are self-serving and recount alleged occurrences of which Plaintiffs have no personal knowledge in violation of Fed.R.Civ.P. 56(e). Supporting documents have not been properly authenticated. In order for this Court to consider such evidence, it must be admissible at trial. *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 192 (5th Cir.1990). Based on these defects, Defendants' objection to Plaintiffs' summary judgment evidence shall be granted and exhibits 1,3, 4, 5, 6, portions of 8 as set forth in Defendants' motion, 9, 10, 13, 14, 18, 19, 20, 21, 23, 25–39, and 40 are stricken.

Moreover, continuity is simply lacking. There is no evidence that these defendants share the decision-making concerning the custody or care of children. Other than the conclusory allegations raised by Plaintiffs, there is no competent evidence that these defendants share a common illegal purpose. Indeed, the County Defendants appear to have been named strictly because of their status as present or former public officials or because of their membership on the Welfare Board.

### 3. *Enterprise*

An "enterprise" includes any individual partnership, corporation, association or other legal entity and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4). An "association in fact" enterprise (1) must have an existence separate and apart from the pat-

tern of racketeering, (2) must be an ongoing organization, and (3) its members must function as a continuing unit shown by a hierarchical or consensual decision making structure. *Landry*, 901 F.2d at 433. Thus, such an enterprise must also meet a continuity requirement. *Id.* For example, an association which briefly flourishes and then fades fails to meet this requirement. *Id.*

 Plaintiffs argue that Defendants comprise an "association-in-fact." The Court disagrees. There is no competent evidence to support the existence of such an enterprise. Lisa Black, Pamela Sweeney, Rhonda Jones, Joyce Pruitt, Shirley Dominey, Virginia Greenwood are employees of the Texas Department of Protective and Regulatory Services. Rodney Kinkaid, Pete Hammock and Ivan Johnson are either present or former county Commissioners of Kaufman County. Neldajo Mathison and Barbara McBurney are former volunteer members of the Kaufman County Welfare Board. The action taken was within the scope of their employment or duties. These defendants share no existence separate and apart from the pattern of racketeering.

To the extent Plaintiffs are attempting to allege that these Defendants aided and abetted others to commit the alleged illegal acts, their attempt fails as a matter of law. *See e.g. Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, N.A., 511 U.S. 164, 189, 114 S.Ct. 1439, 1455, 128 L.Ed.2d 119 (1994) (refusing to imply private cause of action for aiding and abetting under § 10(b)).

The Court concludes that Plaintiffs conclusory allegations are insufficient to raise material questions of fact that a series of criminal acts was committed or that a continued threat of criminal conduct exists. Plaintiffs' subjective belief and hyperbole that the State and County actors misappropriated their child support payments is insufficient to withstand summary judgment. Plaintiffs had the opportunity to offer admissible evidence to create genuine issues for trial. They were given the opportunity to file a RICO Case Statement and allowed to file the Second Amended Complaint. The Court has fairly given them every chance to prove their case at great expense to Defendants. Plaintiffs have failed to sustain their burden. As

such, the Court holds that Plaintiffs' RICO claims fail as a matter of law.

**D.** *McBurney's and Mathison's Motion to Dismiss*

McBurney and Mathison move to dismiss this Complaint against them because Plaintiffs failed to perfect service in a timely manner. McBurney and Mathison assert that Plaintiffs failed to serve them within the 120 days required by Fed.R.Civ.P. 4(m). Rule 4(m) provides in relevant part:

> If service of the summons and complaint is not made upon a defendant within 120 days after filing the complaint, the court ... shall dismiss the action without prejudice ... provided that if the plaintiff shows *good cause* for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m) (emphasis added). Thus, under the Rule, the "tardy plaintiff may avoid the harsh consequences of dismissal if he shows "good cause" for the delay." *Lambert v. U.S.*, 44 F.3d 296 (5th Cir.1995). "Good cause requires more than "inadvertence, or mistake of counsel, or ignorance in the rules."" *McDonald v. United States*, 898 F.2d 466 (5th Cir.1990).

In this case, Plaintiffs filed their Second Amended Complaint July 2, 1997. One-hundred and twenty days from July 2, 1997 is October 30, 1997. Mathison and McBurney were served October 27, 1997. Mathison and McBurney were timely served and they shall not be dismissed on this basis.

The Court notes that Mathison and McBurney also argue that dismissal is appropriate due to Plaintiffs' failure to adequately plead the § 1983 and RICO claims. While the Court agrees with these defendants, based on the Court's rulings above, their argument is moot.

**E.** *Defendants Snow, Durham, Brantley, Hans, Rhodes, McDougald, and Sculin*

According to the Second Amended Complaint, these defendants, like McBurney and Mathison, are members of the volunteer Child Welfare Board. There is no evidence in the Clerk's file to evidence that Snow,

Durham, Brantley, Hans, Rhodes, McDougald and Sculin have even been properly served. Nonetheless, the Court *sua sponte* finds that these defendants are entitled to summary judgment for the same reasons as the County Defendants. *Exxon Corporation v. St. Paul Fire and Marine Insurance Co.,* 129 F.3d 781, 782 (5th Cir.1997). They are hereby dismissed from this action.

### F. Attorneys' Fees and Costs

 Fed.R.Civ.P. 54(d)(1) provides in pertinent part, that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Under Rule 54(d) there is a strong presumption that the prevailing party will be awarded costs. *Schwarz v. Folloder,* 767 F.2d 125, 131 (5th Cir.1985). Absent misconduct worthy of punishment, the Court may not deny costs to the prevailing party without reason. *Id.* There being no such reason in this case, the State Defendants and the County Defendants are entitled to their taxable costs.

Pursuant to 42 U.S.C. § 1988, "the court in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs...." Having reviewed the pleadings and complete record, the Court finds that the Defendants may apply for a reasonable fee award. *See, e.g., Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).

### IV. Conclusion

Based on the pleadings, depositions, affidavits and other admissible evidence, Defendants have established that there is absence of a genuine issue of material fact. Therefore,

IT IS ORDERED that the State Defendants' Motion for Summary Judgment is GRANTED and Defendants Lisa Black, Pamela Sweeney, Rhonda Jones, Joyce Pruitt, Shirley Dominey and Virginia Greenwood are entitled to judgment as a matter of law;

IT IS FURTHER ORDERED that the County Defendants' Motion for Summary Judgment is GRANTED and Defendants James Nixon, Rodney Kinkaid, Pete Hammock, Ivan Johnson, Neldajo Mathison, Barbara McBurney, Ruby Snow, Donna Durham, Andrea Brantley, Billie J. Hans, Steve Rhodes, Charlotte McDougald and Mike Sculin are entitled to summary judgment as a matter of law;

IT IS FURTHER ORDERED that Neldajo Mathison's and Barbara McBurney's Motion to Dismiss is DENIED AS MOOT;

IT IS FURTHER ORDERED that State Defendants' Objections to Plaintiffs' Summary Judgment Evidence is GRANTED;

IT IS FURTHER ORDERED that defendants as the prevailing party may within forty-five days of the date of this Order apply for their fees and costs;

IT IS FURTHER ORDERED that all defendants having been found entitled to judgment as a matter of law and that Plaintiffs shall taken nothing thereby, this case is hereby DISMISSED WITH PREJUDICE.